# Graham *v.* Miller, Appellant.

*Insanity—Weak-minded persons—Evidence—Review.*

1. On an appeal from a decree in a proceeding under the Act of May 28, 1907, P. L. 292, finding a person of weak mind, the appellate court will take into consideration that the court below had the respondent himself before it, in determining whether the decree was correct, and if the testimony of the respondent himself shows weakness, childishness and a sense of personal irresponsibility, and it also appears that the respondent a few years before, had a serious illness which caused a mental change in him, the decree will not be reversed.

2. In a proceeding under the Act of May 28, 1907, P. L. 292, the lower court is not required to reduce to writing, its conclusions of fact and law as in equity cases, nor to make any specific findings as to the appearance, manner and testimony of the respondent.

Argued March 11, 1914.　Appeal, No. 15, March T., 1914, by defendant, from order of C. P. York Co., finding a person of weak mind in case of Nancy Bernice Graham et al. v. Samuel O. Miller.　Before Rice, P. J., Orlady, Head, Porter, Henderson, Kephart and Trexler, JJ.　Affirmed.

Petition to declare Samuel O. Miller a weak-minded person.　Before Ross, J.

The opinion of the Superior Court states the case.

The trial judge without making any specific statements of fact or conclusions of law found as follows:

After a very careful study of all the evidence produced in this case, and with a full appreciation of the responsibility which such proceedings place upon the court, we are clearly and conscientiously impressed with the necessity of appointing a guardian for the purpose of conserving the property of the respondent for his own good.

After hearing the evidence in the above case, the court is of the opinion that the said Samuel O. Miller

has become so weak in mind, and so mentally defective, that he is unable to take care of his property, and in consequence thereof, is liable to dissipate or lose the same, and to become the victim of designing persons, and appoints The Guardian Trust Company, of York, Pa., guardian of the estate of said Samuel O. Miller, upon its entering a bond in double the value of the personal estate, with surety or sureties, to be approved by the court, conditioned upon its faithfully discharging its duties as guardian of said Samuel O. Miller, in accordance with the acts of assembly in such case made and provided.

The costs of these proceedings to be paid by the said guardian out of the estate of said Samuel O. Miller.

*Error assigned* was the decree of the court.

*Allen C. Wiest*, with him *J. W. Gitt*, for appellant.— The court will not appoint a guardian unless the evidence is conclusive: Hoffman's Estate, 209 Pa. 357; Bryden's Est., 211 Pa. 633; Colt's Est., 215 Pa. 333; Mulholland's Est., 217 Pa. 65; Sigler v. Sigler, 18 Pa. Dist. Rep. 345; Ekin v. McCracken, 11 Phila. 534; Gift's Est., 20 Pa. Dist. Rep. 1076; Sturgeon's Case, 14 Pa. Dist. Rep. 205; Beers v. Fenner, 14 Pa. Dist. Rep. 478; Ellerman's Case, 32 Pa. C. C. Rep. 241; Keiser's Case, 4 Lehigh, 173; Snyder's Case, 1 Berks, 234.

*James G. Glessner*, with him *Walter I. Wells*, for appellees.

OPINION BY HEAD, J., July 15, 1914:

This was a proceeding under the Act of May 28, 1907, P. L. 292, entitled, "An Act to provide for the protection of insane persons, feeble minded persons," etc. No attempt was made by the respondent to avail himself of the right to a trial by jury as provided in sec. 4 of the statute, and the case was heard and determined by

the learned judge of the common pleas. Many witnesses were called and examined, including the respondent himself, and the hearing resulted in a decree appointing a guardian to take care of his property. From that decree he appeals.

In 1895 the legislature extended the protection of the state to the property of a class of persons whose mental condition is well described by Chief Justice MITCHELL in Hoffman's Est., 209 Pa. 357, as "intermediate between normal mental capacity and insanity or idiocy, a state of weak or enfeebled mind, neither mens sana nor non compos mentis." In construing and applying the several statutes on this subject, enacted since 1895 and culminating in the act of 1907 just referred to, the courts have fully realized that any interference with the individual right of private property involves fundamental questions of the first importance. Centuries ago the nature of that right was described by Sir William Blackstone "as a sole and despotic dominion," and the preservation of it is one of the strong inducements that have led men to unite in creating and maintaining governments involving the surrender of much of the individual liberty of the citizen. But all men have recognized that it is the duty and the function of the state to extend its protection to the property of those who by reason of infancy or mental weakness, inherited or resulting from sickness, injury or other cause, have not the power of self-protection to the extent that such power is incident to what we call a normal man. Therefore our infants are the wards of the orphans' court and their property remains under its fostering care until they have reached the years of maturity and discretion; whilst our courts of common pleas have been given a like control over the estates of lunatics or habitual drunkards. The act of 1895, therefore, and the acts following it, are in no sense novel and have but extended the recognized powers of the state to a class not theretofore protected.

The act of 1907 allows an appeal from the decree of a court of common pleas in a proceeding under its provisions and empowers this court to confirm, reverse, or modify any such decree. It is clear, however, under the decisions following the several acts mentioned, the appellate courts have fully appreciated the delicacy with which their powers to interfere with a decree entered in such a proceeding should be exercised. The statute expressly provides the respondent himself shall be brought before the court hearing such case, and from the very nature of things his personal appearance, his own testimony, his manner while delivering it, and everything about him that may properly be regarded as indicative of his mental state, must have a powerful influence one way or the other upon the action to be taken by the court. All of this is denied to us, and we have before us but the printed page, cold and lifeless, instead of the living, breathing witnesses who were in the view of the learned court below.

There was much conflict in the testimony of the many witnesses heard. Of necessity it was largely opinion evidence, and much of it was not of high probative value. Surely, however, the respondent cannot complain if we draw our conclusion from his own testimony. We have no desire here to review it in detail, as that could serve no good purpose. We content ourselves with saying that if a normal man, sixty years of age, in the presence of his wife and grown-up children, could deliver the testimony given by this respondent, not only with every seeming sense of personal irresponsibility but with an apparent feeling of gleesome satisfaction in the recital of his own weaknesses, such a thing is wholly outside the experience of any member of this court. But it is fortunate the testimony exhibited a cause for what would otherwise be a most distressing exhibition, in the fact that the respondent a few years ago suffered an almost fatal stroke of paralysis or apoplexy. For three long weeks he was as if dead, and the phy-

sicians in attendance had no hopes whatever of his recovery. What injury to his brain structure resulted from that awful visitation, no human tongue can with accuracy state. In the opinion of his physicians that cause was quite sufficient to account for the change that must manifestly have happened to a man who in earlier years was a successful and prosperous citizen.

We are satisfied the learned counsel who ably represents the respondent is in error in urging upon us that the learned judge below was not strongly impressed by the appearance, manner and testimony of the respondent because he made no specific findings so stating. The statute does not require that he reduce to writing his conclusions of fact and law as in equity cases. The decree which he entered is sufficient evidence of the conclusion he reached, and it cannot be successfully argued that the most potent thing before him to induce such a conclusion was either ignored or overlooked. We agree with him that the evidence fully warranted the decree which was entered and we are all of the opinion it should not be disturbed.

The decree is affirmed and the appeal is dismissed at the costs of the appellant.