## Arthur's Case.

Argued April 18, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE,

STADTFELD, PARKER, RHODES and HIRT, JJ.

*Friedjoff D. Tappert,* for appellant.

*Howard W. Stull,* with him *Scanlan & Harkins,* for appellee.

OPINION BY STADTFELD, J., June 28, 1939:

Kate Arthur by petition prayed that the Court of Common Pleas of Cambria County adjudge her cousin, Harry Arthur, a weak-minded person and appoint a guardian for his estate. Many witnesses were called and examined, including the respondent himself. The hearing resulted in a decree adjudging Harry Arthur to be a weak-minded person, unable to take care of his property, and in consequence thereof, liable to dissipate or lose the same or become the victim of designing persons. Petitioner recommended the appointment of W. Kenneth Sworb as guardian; respondent suggested the appointment of Edward Berkey, if the court should find respondent weak-minded, and the appointment of a guardian necessary. Rejecting the suggestions of both petitioner and respondent, the court below, in the decree appointed Albert Grasdyke as guardian of Harry Arthur's estate. From this decree respondent appeals.

The questions involved in this appeal pertain to the sufficiency of the evidence warranting the appointment of a guardian, and to the discretion of the court below in failing to appoint respondent's nominee.

The general case history of appellant is undisputed. It appears that during the ten year period immediately preceding the hearing, Harry Arthur had, on two or three different occasions, been placed in the custody of institutions for mentally ill patients. His property and business affairs were taken care of by his wife and, after her death, by his sisters. Even when at home during this period he never managed his own business affairs. In fact, his physical condition was such as to require his sisters' looking after his person and tending to his personal needs as well. After the death of his last surviving sister, Harry Arthur and his property were looked after by Edward Berkey and his wife, who had been on friendly terms with the family for some time and who had managed the properties of its members during the last few years. Prior to the present hearing, Mr. Berkey placed Harry Arthur in the Scalp Level Home, where his personal physical needs were attended to.

According to the testimony of petitioner's witnesses, respondent's mental condition was evidenced chiefly by the nature of his conversation. He rarely, if ever, engaged in conversation upon his own initiative; his ordinary conversation showed signs of confusion and incoherence, and his answers were often unresponsive. Respondent's own witnesses characterized him as being "melancholic" and "sour on life." His own testimony leaves traces of impaired memory, irrational perception of time sequence and personal irresponsibility. By his own admission, he could not take care of his property very well. The court below, having had the opportunity of considering respondent's personal appearance, his testimony and his manner of delivering it, found him mentally abnormal.

On an appeal from a decree in a proceeding under the Act of May 28, 1907, P. L. 292 as amended, (50 PS §941 et seq.) finding a person of weak mind, this court will not reverse where the evidence of the witnesses

together with the impression given by appellant himself while on the stand is sufficiently strong and clear to warrant the conclusion of the court below. See *Graham v. Miller*, 57 Pa. Superior Ct. 479.

The united opinion of the witnesses who testified in support of the petition at the hearing indicates that appellant was in no condition to take care of his property or to manage his business affairs, but might easily become the victim of designing persons. No specific instances, however, were offered to show that appellant had in the past dissipated his property or been victimized by designing persons. For this additional reason, appellant now contends the appointment of a guardian was unwarranted. It was precisely for the purpose of preventing and forestalling any such instances through precautionary legislation that the Act of 1907 and amendments thereto were passed. This Act of Assembly, like its predecessor, the Act of June 25, 1895, P. L. 300, was intended to operate prospectively, in order to protect a weak-minded person against his own improvidence thereafter. See *Gorgas v. Saxman*, 216 Pa. 237, 65 A. 619.

Furthermore, the selection of a particular guardian for a weak-minded person lies within the sound discretion of the court to which the application has been made; and this court will not reverse unless there has been an abuse of that discretion: *Voshake's Estate*, 125 Pa. Superior Ct. 98, 189 A. 753. As to appellant's own nominee, Edward Berkey, the court below in its opinion stated, "Mr. Berkey seems to have taken entire charge of the property of the respondent and his business affairs, and we are quite satisfied that the respondent was dominated entirely by the will of Berkey. We do not say that Berkey has taken advantage of the weakness of the respondent, but we are satisfied that if he were so inclined he would be able to do as he wished with the property of the respondent and the respondent would believe that his own interests were

being protected." In a like manner the court below refused to appoint appellee's nominee, W. Kenneth Schworb. It is well established that the court is not bound to confine its ultimate selection from among those recommended by either party to the proceedings. In *Voshake's Estate*, supra, this court, in an opinion by Brother RHODES, stated, at pp. 101, 103: "Naturally, the courts, in the administration of such estates, desire the fullest information and aid in discharging their exacting duties. Suggestions relative to whom the parties desire as guardians may be helpful, and should be considered; but to hold that such suggestions are binding upon the court in all cases would be to remove the duty of appointment, with its attendant responsibility, from the court, where the statute imposes it, and entrust it to the petitioners in these matters. Although, in a particular case, the court might accept petitioner's nominee with benefit to all concerned, nevertheless the dangers of a rule which would enforce that procedure, in every instance, are obvious. The court should not knowingly appoint one wholly distasteful to those interested; neither should it select as a guardian any one who has, or may have, an interest adverse to that of the incompetent, and counsel for one who may have an adverse interest should not be accepted."

The appointment of a third person, Albert Grasdyke, as guardian for Harry Arthur's estate was clearly an expression of judicious impartiality. Nothing in the testimony tends to establish that this selection was wholly distasteful to any interested party, nor that he was himself possessed of any interest adverse to that of the incompetent. Under such circumstances, we are convinced that the action of the court below is above any charges of abuse of discretion.

Order affirmed. Costs to be paid out of the estate.