## Wingert Case.

Argued September 30, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Ralph S. Croskey*, with him *Joseph A. Allen*, for appellant.

*George F. Shinehouse, Jr.,* with him *Albert Barnes Zink,* for appellee.

OPINION BY HIRT, J., January 14, 1949:

In this proceeding under the Act of May 28, 1907, P. L. 292, as amended, 50 PS §941, the lower court found that Anna E. Wingert was incapable of caring for her property and because of weakness of mind had become the victim of designing persons. The court accordingly appointed guardians of her estate. There is no merit in this appeal taken in her name from that order. The order will be affirmed.

Anna E. Wingert had lived with her husband for over 40 years in her house at 506 Oak Lane Avenue in Philadelphia. He was an artist. The business management of their affairs devolved upon her. She is now about 74 years old. Since the death of her husband in 1945 her weight has dropped from 120 to 80 pounds and there are other signs of marked physical deterioration. While she displayed a certain mental alertness at the hearings in this case there can be no doubt that because of senility and resulting mental weakness she is incapable of transacting business and is liable further to become the easy victim of designing persons. That is the opinion of the only competent medical witness in the case and that conclusion as to her mental capacity is amply confirmed by her acts in relation to her property during the past two years.

A Mrs. Wisgo who lived in the neighborhood had become attentive to Anna E. Wingert and some time in September 1946 moved into the Wingert home with her husband. On October 2, 1946 a written agreement was entered into by Mrs. Wingert and the Wisgos providing for the sale to the Wisgos of Mrs. Wingert's Oak Lane property for $10,000, payable $4,000 in cash and a purchase money mortgage for $6,000. In addition, the Wisgos were to provide room and board for Mrs. Wingert in her former home for the period of two years. Mrs.

Wingert previously had listed the property with a real estate dealer for sale at $20,000 but, according to her testimony, sold it for one-half that amount because the Wisgos "were so kind and good to me". The support agreement was an additional consideration. Mrs. Wisgo said that she paid the $4,000 in cash to Mrs. Wingert at her home. The Wisgos, whose only income was the husband's moderate earnings, never had a bank account up to that time. Mrs. Wingert's recollection was that the $4,000 was paid by check and was deposited by her in one of her bank accounts. The bank records show no such deposit. Other circumstances question whether any hand payment was actually made. Moreover, Mrs. Wingert had always been frugal almost to the degree of penury. And although her house had become run-down and was in need of repairs she spent little on maintenance during the lifetime of her husband. But immediately after Alice A. Wisgo took title to the property, extensive improvements were made and the house was completely renovated and redecorated at a cost of $15,000, of which Mrs. Wingert paid $14,000, according to Mrs. Wisgo's testimony. On October 6, 1947 Mrs. Wingert withdrew $6,000 from her bank accounts and gave the cash to Mrs. Wisgo who deposited that amount in the Fidelity-Philadelphia Trust Co. in an account which she had opened on September 12, 1942, with an initial deposit of $2,000 (a part of $5,000 previously given her by Mrs. Wingert for remodeling the house). Mrs. Wisgo then delivered two checks to Mrs. Wingert totaling $6,000. The purpose of the exchange of checks for the cash is obvious; cashed checks are of themselves prima facie evidence of payment. Owen F. McLane, a member of the Philadelphia bar had drawn a will for Mrs. Wingert and had represented her well over a period of years in other matters. She asked him to satisfy the mortgage on a power of attorney. When he learned that no consideration had been paid, he questioned Mrs. Wingert's mental capacity to give her money

away and refused to act. Joseph A. Allen, the lawyer who succeeded him then drew a new will for her and arranged for the satisfaction of the $6,000 mortgage. On October 6, 1947, Mrs. Wisgo deposited an additional $5,000 in her checking account which she had received from Mrs. Wingert.

Mrs. Wingert had been a shrewd investor; Howard J. Lynch was her broker. She acknowledged that he was largely responsible for making what money she had and her confidence in him was well placed. He testified that Mrs. Wingert came to him in April 1947 stating that she was worried about $23,000 which she had loaned to the Wisgos on their note; that recently she had given the notes to Mr. Wisgo at his request and he had destroyed them. Twice during June 1947 Mrs. Wingert told him she needed money to pay for the improvements on the house then owned by the Wisgos and at her request he sold two lots of her securities for $2,299.27 each. Both checks were cashed and the proceeds could not be traced into any bank account. In August 1947 Mrs. Wingert again asked Lynch to sell additional securities. She wanted $2,500 with which to buy an automobile for the Wisgos although she herself had never owned a car. Lynch advised against the gift and persuaded her that she was using up her principal too fast. For the moment she was grateful for the advice but shortly thereafter all of Mrs. Wingert's securities were delivered to her at the request of Allen, her new attorney. Thereafter Lynch did not serve as her broker or advisor. Later, she did actually pay $1,700 on the purchase price of an automobile for the Wisgos.

As of October 1946, Mrs. Wingert had five bank accounts with total balances of almost $23,000 in addition to $5,000 cash in her safety deposit box. She also held a mortgage for $4,200 and securities worth almost $37,000. Thus, her known personal estate consisting of cash and investments, just before she sold her house to the Wisgos, amounted to about $70,000. To this should

be added the actual value of her real estate at 506 Oak Lane Avenue, to estimate her then financial worth. There was evidence at the hearing in this case, a year and one-half later, that Mrs. Wingert estimated her then worth at but $30,000—$20,000 in cash and $10,000 in securities. In the meantime she had been living with the Wisgos in her former home and was maintained by them there. Judge OLIVER found that the Wisgos, within the period of eighteen months had obtained "at least $32,000 from Mrs. Wingert, in return for which she got only an agreement to look after her for two years . . ." expiring January 1, 1949. There is some evidence of a verbal understanding that the Wisgos intended to care for Mrs. Wingert for life and that Mrs. Wingert's present lawyer had been instructed to reduce the agreement to writing. This however, has not been done.

Certainly "it is a serious thing to deprive any person of the control of [her] own property or of [her] right to dispose of it by will" which may result as an incident of an order in a proceeding such as this. *Denner v. Beyer,* 352 Pa. 386, 42 A. 2d 747. Mrs. Wingert appeared at the hearing in this case, as required by the statute, and the lower court had an advantage in this respect which is denied us. Cf. *Graham v. Miller,* 57 Pa. Superior Ct. 479; *Arthur's Case,* 136 Pa. Superior Ct. 261, 7 A. 2d 55. Judge OLIVER stated his impressions thus: "Mrs. Wingert is a charming person, and on superficial observation might still seem to be bright and intelligent. A comparison of her disposition and background prior to the time the Wisgos took her in charge, with what has happened since, shows forcibly, however, the mental and physical deterioration which has taken place in the last two and a third years." Acts and conduct are at least as important as spoken words in determining the mental capacity of one alleged to be incompetent. *Ryman's Case,* 139 Pa. Superior Ct. 212, 218, 11 A. 2d 677. This is not a case of a balance of testimony raising the question whether the lower court is chargeable with

abuse of discretion in the order appealed from. Disposition of this proceeding did not involve the exercise of any discretion. The testimony so overwhelmingly indicates Mrs. Wingert's need for a guardian to represent her interests that no other order would be conceivable. This from the *Refior Case,* 160 Pa. Superior Ct. 305, 314, 50 A. 2d 523, is pertinent here: "Whether an alleged incompetent is found to be mentally 'confused', 'defective', 'feeble', or 'weak' is not vitally important. If, as here, it appears that one's mind is so affected that as a consequence thereof he is liable to dissipate or lose his property and become the victim of designing persons, the court, if other requirements are met, may appoint a guardian."

Order affirmed.