## Friedlander Appeal.

Argued September 27, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Carroll Caruthers*, for appellants.

*Fred B. Trescher,* with him *Kunkle & Trescher,* for appellee.

OPINION PER CURIAM, November 14, 1956:

We modify the decree of the court below by reducing the commission of the guardian from $9360 to $6240 and the attorney's fee for the guardian from $6000 to $4000. On the principal questions we affirm upon the following excerpts from the opinion of the court below:

"Many years prior to December 6, 1949, Samuel Miller and Wolf Daniels, both of Greensburg, formed a partnership for the purpose of conducting a scrap iron business in that municipality under the firm name of Daniels and Miller. Mr. Daniels and Mr. Miller were brothers-in-law, Mrs. Daniels being a sister of Sam Miller. On the death of Wolf Daniels, his interest in the partnership was taken over by his three sons, Jacob Daniels, Lewis Daniels and Harry Daniels. Therefore, on December 6, 1949, the partnership consisted of Sam Miller, a weak-minded person, and his three nephews, Jacob Daniels, Lewis Daniels and Harry Daniels; Sam Miller owning an undivided one-half interest and the three Daniels boys owning the other undivided half interest.

"Mr. Miller, more familiarly known as Sam Miller, had been under the care of a doctor for some time and on December 6, 1949, Lewis Daniels, a nephew and partner of the said Samuel Miller, filed a petition in this Court at the above number and term for the appointment of a guardian for Sam Miller, alleging that the said Sam Miller was mentally defective and unable to take care of his person, property and estate.

"A hearing was had on the said petition, on December 21, 1949, and after testimony taken, a decree was

entered adjudging the said Sam Miller incompetent and unable to take care of his property and estate, and the First National Bank in Greensburg, was appointed guardian of the estate of the said Sam Miller, alias dictus Samuel Miller.

"At the time the First National Bank in Greensburg was appointed guardian on December 21, 1949, it gave bond, and assumed the duties of the office, and filed numerous petitions in this court relative to its ward's property and estate. On May 11, 1951, a petition was filed by Jacob Daniels, Lewis Daniels and Harry Daniels, partners of Sam Miller, praying that the partnership theretofore existing between the petitioners and Sam Miller be dissolved.

"After due and careful consideration by the Court, the prayer of the petitioners was granted and the partnership was dissolved May 31, 1951 by decree of this Court. On June 4, 1951, a hearing was held to determine the value of the partnership property and business of the firm known as Daniels and Miller. Notice was given to all parties in interest at that time, namely, the next of kin, as provided by law. No one appearing in court or objecting to having the value of the partnership assets ascertained, fixed and determined, the value of Sam Miller's interest in the partnership of Daniels & Miller was established. Numerous witnesses were called and testified as to the value of the business of the partnership, at least one of the witnesses being engaged in the real estate business in Greensburg, Pennsylvania, and knowing the value of the real property, which was owned by the partnership; other witnesses being engaged in the scrap iron business and yet other witnesses being engaged in the motor vehicle business. The testimony of the witnesses, taken and filed at the above number and term, shows Mr. Miller's

interest in the partnership to have been approximately seventy or eighty thousand dollars.

"Jacob Daniels, Lewis Daniels and Harry Daniels, the former partners and nephews of Mr. Miller, offered to purchase the interest of Sam Miller, the weak-minded person, and pay therefor the sum of $70,000.00 in the manner following: $40,000.00 in cash and $1,000.00 per month for thirty months. In addition to the consideration of seventy thousand dollars for the one-half interest in said partnership, the former partners agreed further that if Sam Miller should live after the last payment of one thousand dollars had been made, then, the Messrs. Daniels, purchasers, would continue to pay to the guardian of Mr. Miller the sum of $350.00 per month as long as the said Sam Miller lived, he being their mother's brother.

"The Court, having in mind the best interests of the incompetent, approved the sale of the ward's interest in the partnership, to Jacob Daniels, Lewis Daniels and Harry Daniels, his former partners and nephews.

"It must be borne in mind that when the petition for the appointment of a guardian in this case was filed on December 6, 1949, the Act of 1951 had not been passed. Accounts up to that time, which were filed in the office of the Prothonotary, were duly advertised, confirmed nisi and if no exceptions were filed the said accounts were confirmed absolute.

"The record shows that the first and partial account of the guardian, in the instant case, was filed on October 19, 1951, and on November 17, 1951, the account was confirmed nisi. On November 28, 1951, no exceptions having been filed thereto, the account was confirmed absolute sec. reg. et sec. leg.

"The incompetent, Sam Miller, having died on February 8, 1952, a second and final account was filed by

the guardian in this Court on April 5, 1952, confirmed nisi May 10, 1952, and absolute May 21, 1952, sec. reg. et sec. leg.

"A contest having developed over the will of Samuel Miller, on May 6, 1952, Edwin J. Morrell, Esquire, was appointed administrator pendente lite of the estate of Sam Miller, alias dictus Samuel Miller, who had died testate on February 8, 1952. The said Edwin J. Morrell was the representative of the estate of Sam Miller, alias dictus Samuel Miller, and was acting in that capacity when the second and final account was filed and confirmed absolute.

"An amended second and final account was filed by the guardian on May 2, 1952, and confirmed nisi August 30, 1952. On September 10, 1952, this amended second and final account was confirmed absolute sec. reg. et sec. leg.

"The docket entries show that Edwin J. Morrell, Esquire, Administrator pendente lite was, on May 27, 1952, served with a notice of the filing of the amended second and final account and that the same would be confirmed nisi on August 30, 1952.

"The docket entries further show that the second and final account, and the amended second and final account, were duly advertised in the Mt. Pleasant Journal and the Westmoreland Law Journal on August 8, 15, 22 and 29, 1952, and personal notice of the filing of said account was given to Mr. Morrell, with a copy of the same. See affidavit of Trust Officer filed. The docket entries in this case also show that all of the next of kin of Samuel Miller a weak-minded person, were served with notice of the filing of the amended second and final account between May 2, 1952 and May 5, 1952, and notice that the said account would be presented to the court for confirmation nisi on August 10, 1952.

"On the 2nd day of February, 1953, the last will and testament of the said Samuel Miller was sustained by the Orphans' Court and admitted to probate, the said Edwin J. Morrell, Esquire, discharged as Administrator and Samuel Friedlander and Walter W. McVay named as executors in the will were duly qualified as such.

"William M. Kahanowitz, Esquire, Counsel for the Guardian, having suffered a heart attack in February, 1953, and being confined to his bed for several months, and the Guardian not having been advised of the action of the Orphans' Court in sustaining the will of its ward, Sam Miller, employed Fred B. Trescher, Esquire, a member of this Bar, to state and present to the Court for approval or disapproval a second and final account of its guardianship. This account was presented to the court and confirmed nisi, March 31st, 1953. On the same day, this Court, not being advised that the will of the incompetent ward had been sustained and admitted to probate by the Orphans' Court signed an order approving the petition for distribution and directing that the funds in the hands of the guardian be turned over to Edwin J. Morrell, Administrator pendente lite of the estate of Sam Miller and that the guardian be discharged from all liability.

"On June 26, 1953, Samuel Friedlander and Walter W. McVay, brother and brother-in-law of Sam Miller's wife, who had predeceased the incompetent ward, having qualified as executors of the estate of Samuel Miller on February 2, 1953, filed a petition in this court asking for a rule to show cause why the decree of the Court entered March 31, 1953, above recited, should not be vacated and set aside and why the respective confirmations of the first and partial account and second and final account and amended second and final

account should not be vacated and the executors be permitted to take such exceptions to the said accounts as they deemed advisable.

"To this petition a responsive answer was filed by the First National Bank in Greensburg as guardian and the matter placed on the argument list.

"On May 21, 1954, an order and decree was filed vacating the order of May 31, 1953, supra, and directing the First National Bank in Greensburg, Guardian of the estate of Sam Miller, alias dictus Samuel Miller, to file a new petition for distribution and discharge and give notice thereof to Samuel Friedlander and Walter W. McVay, executors, etc.

"A new petition of the said guardian for distribution was filed August 6, 1954, and copies of the petition for distribution were served August 6, 1954, on Carroll C. Caruthers, Esquire, Attorney for the Executors of the Estate of Sam Miller, alias dictus Samuel Miller, and copies of the petition for distribution were also served on August 11, 1954, on Samuel Friedlander, individually and served on August 11, 1954, on Walter McVay by registered mail, notifying them that the said petition for distribution would be presented to the court on August 23, 1954.

"This petition for distribution as filed on August 6, 1954, by the guardian met the requirements of the Act of Assembly.

"Nothing was done by the said executors or their Counsel until August 23, 1954, the date set for the presentation of the petition for distribution, when Counsel for the Executors informed the Court that an answer was being filed that day to the petition for distribution and discharge. The same day, the Executors filed an answer in the Prothonotary's office admitting the guardian's amended second and final account had

been filed but denying that the same was duly advertised, or notice given, notwithstanding the docket entries show that the amended second and final account was duly advertised and confirmed nisi and absolute, and served on Counsel for the Executors August 6, 1954.

"The answer of the executors is not an exception to the petition for distribution and discharge of the guardian.

"On September 30, 1954, the executors filed a petition to review and obtained a rule on the guardian to show cause why the confirmation of the first and partial account, the confirmation of the amended second and final account should not be vacated and set aside and the several accounts reviewed.

"The petition erroneously alleged 'that the guardian gave no written notice as required by the Act of Assembly in such case made and provided, of the filing of its first and partial, second and final, and amended second and final accounts as required by law and no notice of its call for audit or confirmation of said accounts or either of them was given to any person, as required by the Act of Assembly, and that the purported confirmations nisi and absolute as to each account are void and of no effect insofar as they relate to your petitioners.

"This statement was error and misled the Court . . . The Court being so erroneously misled by the petitioners, erroneously granted their prayer . . .

"The executors in their petition for review, assert that the sale price of the interest of Sam Miller in the partnership of Daniels & Miller was grossly inadequate and an improper sale of the property of the weak-minded person. With this, we are unable to agree. We are of opinion that the consideration, for which

the interest of the ward was sold, was fair and reasonable and was fixed after a hearing had in open court on June 4, 1951, at which hearing a number of witnesses testified as to the value of the assets of the partnership. All of the next of kin of Samuel Miller had notice of said hearing. No one objected to the proposed sale and no better offer was submitted.

" 'In considering a petition for the approval at private sale of an incompetent's interest in real estate the paramount duty of the court is to determine whether the proposed sale is for the best interests of the incompetent and either approve or dismiss the petition accordingly.' *Pelechacz Estate,* 179 Pa. Superior Ct. 177.

"After due and careful consideration and after hearing as aforesaid, the Court was of the opinion that the proposed sale was for the best interest of the incompetent and his estate and made an order accordingly, approving the sale of the ward's interest in the partnership for $70,000, payable as follows: $40,000 presently, and $1000 per month for thirty months, with additional payments of $350 per month during the lifetime of the ward. The Court being mindful of the interests of the ward and recognizing that he might live for a great while after the installment payments of Thirty thousand dollars had ceased, was of opinion that $350 per month for the rest of the ward's life would insure the incompetent ward a good home and kind treatment for the rest of his sojourn in this world . . .

"The record in the instant case shows that the sale of Samuel Miller's interest in the partnership of Daniels & Miller was consummated only after several hearings at which testimony was taken in detail. The evidence covered all of the matters, which the petitioners

now seek to bring into question. The Court entered a decree directing the guardian to make the sale and specifying the terms upon which the same should be made. The guardian in effecting the sale was merely carrying out the directions of the Court. The same is true with respect to the items specified in the final account. Although no testimony was taken as far as this Court or the guardian knew the only person entitled to notice was Edwin Morrell, as Administrator pendente lite, who was given actual notice and advised of the date of confirmation. The filing of the account was duly advertised; the fees and other expenses set forth in the account, were therefore fully approved in the manner required by law and were paid. The bank as guardian was merely executing the directions of the Court in every instant.

"Orders of the court in a weak-minded proceeding either directing that particular things be done or confirming accounts are final orders and are in exactly the same category as judgments and cannot be disturbed after the time for appeal has passed . . .

"Although Mr. Miller was adjudicated a weak-minded person in 1949, this proceeding is governed by the Act of June 28, 1951, P. L. 612, which became effective January 1, 1952, 50 P.S. 1634. This Act requires that notice of the filing of the account and its call for audit or confirmation shall be given to the personal representative of a deceased ward and such other person as the Court by general rule or special order shall direct. 50 P.S. 1881 and 1883.

"Prior to July 1, 1954, this Court had adopted no rule, which required notice to any person other than the personal representative of a deceased ward and such notice was given to Mr. Morrell as Administrator pendente lite, and the amended second and final account was filed of record May 2, 1952.

"The Act of 1951, 50 P.S. 1903, provides that: 'a guardian filing an account shall file a statement of proposed distribution or a request that distribution be determined by the court or by an audit as local rules may prescribe. The statement of proposed distribution shall be in such form and such notice thereof shall be given by advertisement or otherwise and objections thereto may be made as local rules prescribe.'

"In the absence of a rule, but in accordance with the Act mentioned, a petition for distribution was prepared by the guardian and filed August 6, 1954, notice and copy of which was given to Counsel for the executors the same day.

"The amended second and final account, which was confirmed by the Court September 10, 1952, shows the names of the persons to whom the money available for distribution was awarded and the amount or share to each.

"As revealed by the record virtually all of the money derived by the guardian from the sale of Samuel Miller's interests in the partnership carried on under the name of Daniels & Miller as well as the fund derived from the sale of other assets belonging to him were used and paid in conformity with the Court's order for income taxes, hospital, medical, nursing, household expenses and care of the incompetent, who was bedfast and required constant attention during most of the period of the guardianship . . .

"It is to be borne in mind, moreover, that the granting of a bill of review in any case calls for a dispensation of equity's grace and not for the recognition of a legal right . . . Consequently, before equity will grant relief, 'it must appear that good conscience and substantial justice require it.' *Stewart Estate,* 358 Pa. 434, 439 . . .

"We are of opinion that nothing new or of advantage to any of the parties concerned or interested in this matter is to be gained by a review, rehearing or opening of the accounts. In their petition Counsel for the petitioners cite only a portion of the Act of 1951, supra, relating to the opening of accounts of a guardian. The entire section should be considered and complied with. It is as follows: 'If any party in interest shall, within five years after the final confirmation of any account of a guardian, file a petition to review any part of the account, or of an auditor's report, or of the adjudication, or of any decree of distribution, setting forth *specifically* alleged errors therein, the court shall give such relief as equity and justice shall require: Provided, That this section shall not authorize review as to any property distributed by the guardian in accordance with a decree of court before the filing of the petition. The court or master considering the petition may include in his adjudication or report findings of fact and of law as to the entire controversy, in pursuance of which a final order may be made.' 50 P.S. 1921. See Lias Appeal, 373 Pa. 438 . . .

"It would be manifestly unfair at this time to open and attempt to review the numerous matters which were determined by the several decrees of this Court even after a full hearing and an opportunity for the executors to be heard."

As thus modified, the order is affirmed, costs to be paid by the estate.