## Earnshaw Appeal.

Argued June 12, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

Before WINDLE, P. J.

*Lawrence E. MacElree*, with him *MacElree, Platt & Marrone*, for appellant.

*Robert S. Gawthrop, Jr.,* with him *William H. Lathrop,* and *Gawthrop & Greenwood,* and *Montgomery, McCracken, Walker & Rhoads,* for appellee.

OPINION BY WRIGHT, J., September 11, 1958:

On February 28, 1939, George E. Earnshaw, Jr. was adjudged by the Court of Common Pleas of Chester County to be an incompetent, and the National Bank of Chester County and Trust Company and Edna L. Hagert were appointed guardians of his estate. Edna L. Hagert died May 10, 1956. George E. Earnshaw, Jr. is the beneficiary of a trust under the will of his deceased father, George E. Earnshaw, and the income therefrom is paid by the trustee to the surviving guardian. On September 12, 1956, George E. Earnshaw, Jr. petitioned the court below to find that he had become competent, and to remove the guardian. A rule was granted, to which answers were filed by the next of kin of George E. Earnshaw, Jr., namely, Jeannine L. Earnshaw and George E. Earnshaw, 3rd, denying that George E. Earnshaw, Jr. had become competent. After a full hearing, the court below, on November 4, 1957, found that George E. Earnshaw, Jr. was still an incompetent. A decree was accordingly entered dismissing the petition. George E. Earnshaw, Jr. has appealed.

Section 323 of the Incompetents' Estates Act of 1951[1] reads as follows: "The court, upon petition and

[1] Act of 1951, P. L. 612. The present proceeding is governed by this statute. See comment of the Commission under Section 104, also *Friedlander Appeal*, 386 Pa. 495, 126 A. 2d 393. However, the 1955 re-enactment of the Incompetents' Estates Act, as amended in 1957, makes no change in the language quoted. See Section 323 of the Act of February 28, 1956, P. L. (1955) 1154, as amended by Act No. 379 of 1957, P. L. 794, 50 P.S. 3323. The principal purpose of the re-enactment was to vest jurisdiction in the Orphans' Court, not only of estates thereafter created, but also of estates then existing which the Court of Common Pleas might choose to transfer.

after such notice as it shall direct, may find, after a hearing at which good cause is shown, that a person previously adjudged incompetent has become competent". Under this statutory provision, the burden is placed upon the petitioner. The determination whether a person previously adjudged incompetent has or has not become competent, like an original determination whether the appointment of a guardian is necessary, *Voshake's Estate,* 125 Pa. Superior Ct. 98, 189 A. 753, is a matter which lies within the sound discretion of the court to which the application is made, and the appellate court will not reverse unless there has been an abuse of that discretion. The conclusion of the court below in such a proceeding will not be disturbed if it is warranted by the evidence: *Arthur's Case,* 136 Pa. Superior Ct. 261, 7 A. 2d 55. See also *Sigel Estate,* 169 Pa. Superior Ct. 425, 82 A. 2d 309.

Appellant was 51 years of age at the time of the hearing. He resides in East Bradford Township, Chester County, on a 68 acre farm which is a part of the trust. This farm consists entirely of pasture land and is not income producing. The guardian pays, inter alia, the real estate taxes, repairs and maintenance, fuel oil, car expense, and a considerable income tax. The guardian also pays directly to appellant the sum of $500.00 per month. In addition the guardian pays $300.00 per month to Mr. and Mrs. L. W. Zachary, who live with appellant on the farm. Mr. Zachary is appellant's companion.[2] Mrs. Zachery is the housekeeper. Of the $500.00 received monthly by appellant, he gives

---

[2] "Q. What are your general duties with respect to your employment? A. Well, to drive Mr. Earnshaw's car and take him any place that he has to go, like chauffeur, manager of the estate and try to keep Mr. Earnshaw and the National Bank happy, and I work on the place myself. Q. How much of the time are you with Mr. Earnshaw? A. Twenty-four hours a day, approximately".

$300.00 to the Zacharys for household expenses, and uses the balance for his personal needs.

At the hearing, the testimony on behalf of the petitioner was that of appellant himself, Mr. Zachery, Mrs. Zachary's brother, the trust officer of the guardian, and two physicians, Dr. VanderMeer, a psychiatrist, and Dr. Pasewark, a clinical psychologist. Respondents adduced the testimony of one physician specializing in psychiatry, Dr. Wagonheim. We deem it unnecessary to detail the testimony of the lay witnesses other than to point out that appellant definitely indicated a gross misconception of the amount of income from the trust, presently $2500.00 per month. Dr. VanderMeer testified that appellant was "competent according to the letter of the law", but that he was a dependent personality who "might certainly require skillful help". On cross-examination, Dr. VanderMeer conceded that appellant might readily be swayed by stronger personalities and become the victim of designing persons, but insisted that appellant's condition was due to "his personality structure", and not to mental deficiency or mental illness. Dr. Pasewark also testified that appellant was not mentally defective or mentally ill, but admitted that he was "a very dependent individual". Dr. Wagonheim testified that appellant was not competent, unable to care for his estate, and definitely liable to become the victim of designing persons. On cross-examination, Dr. Wagonheim stated that appellant was not "mentally deficient" in the technical sense, but that he was "suffering from a defect in his capacity to think and evaluate data", a condition which the witness classified as "mental illness".[3]

---

[3] "I think this man is mentally ill . . . from a psychiatric position I would say this man is sick, part of his mental equipment is defective . . . I view mental illness as a large term, there are various kinds of it. I think this man's problem is probably constitutional, it is a defect in his thinking".

We are not unduly troubled by the question of semantics. The purpose of the Incompetents' Estates Act is preventative and protective in nature: *Card Appeal,* 177 Pa. Superior Ct. 502, 110 A. 2d 856. The following language of President Judge BALDRIDGE in *Refior Case,* 160 Pa. Superior Ct. 305, 50 A. 2d 523, is particularly appropriate: "Whether an alleged incompetent is found to be mentally 'confused', 'defective', 'feeble', or 'weak' is not vitally important. If, as here, it appears that one's mind is so affected that as a consequence thereof he is liable to dissipate or lose his property and become the victim of designing persons, the court, if other requirements are met, may appoint [or refuse to remove] a guardian". See also *Wingert Case,* 163 Pa. Superior Ct. 616, 63 A. 2d 441.

Our review of this record clearly indicates that the court below did not abuse its discretion, and that its conclusion is supported by the evidence. In effect, appellant is institutionalized on his own farm, with a companion constantly at his side, to whom he may turn for guidance. Disregarding technical terms, appellant is a dependent individual with a mind so affected that he is unable to properly manage his estate. In continuing the guardianship, the court below wisely performed its duty to protect appellant from dissipating his property and to shield him from the influence of designing persons.

Decree affirmed.