## Piskorz Estate

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Michael J. Pepe, Jr.*, for exceptant.

*Larrick B. Stapleton*, contra.

SAYLOR, J., June 25, 1965. — This contest involves the appointment by the hearing judge of a member of the bar as guardian of the estate of a 72-year old patient at Philadelphia State Hospital who is admittedly incompetent. The attorney for the Commonwealth as a creditor filed on April 9, 1965, a petition for a citation which was issued on April 19, 1965 and served on the alleged incompetent. Her brother on April 15, 1965, filed his petition for the same purpose but with another guardian proposed and also filed an answer to the prior petition, admitting all the substantive averments thereof but denying that the guardian suggested by the petitioner had no interest adverse to the alleged incompetent.

At a hearing before President Judge Klein on May 11, 1965, it developed that the alleged incompetent had

been picked up on a Philadelphia street by a policeman and taken to the Philadelphia General Hospital, that after a month she was removed to the Philadelphia State Hospital where she has been a patient since November 8, 1962. As of April 30, 1965, the charges incurred for her care and maintenance totalled $3,654.55, for the collection of which the Commonwealth attorney began these proceedings.

The attending physician's affidavit of incompetency established the unchallenged inability of the respondent to manage her property and the liability to dissipate it and to become the victim of designing persons due to a condition diagnosed as "schizophrenic reaction, paranoid type." There was no disagreement as to the nature and extent of the incompetent's property, consisting of a house in Philadelphia assessed at $1,900 and personalty of approximately $11,000 consisting of bank deposits. There is also $619.59 in cash held by the Philadelphia police together with bank books found in the incompetent's house when neighbors complained of its having been abandoned by the incompetent and left vacant while she was in hospital.

The testimony further adduced established the fact that the incompetent had as next of kin a son, Stanley, who lives in New York, and a brother, Anthony Chiruck; that neither one made any payment for the care of the incompetent at the hospital over the two-and-one-half year period; and that the son "does not want to be bothered with his mother."

Anthony Chiruck, the second petitioner, testified that he saw his sister when she came to his house; that four or five months later he called at her house and was told by a neighbor that she had been taken by the police to the Philadelphia General Hospital, whence after 30 days she had been transferred to the Philadelphia State Hospital; that he visited her there a few times; that he tried to persuade Stanley, the

son, to see his mother and that he refused because his wife did not like his mother; and that he wanted the court to appoint a member of the bar who had been recommended to him and who had no interest adverse to the incompetent.

The son Stanley was not present in court and was not represented.

In the attending physician's affidavit appear these words: "Patient appears her stated age of 72, is somewhat overactive. She is very conversant with many ideas concerning her money in the bank. States that her family is trying to get all her money and wanted to get rid of her."

At the conclusion of the hearing, President Judge Klein entered a decree, adjudging the respondent incompetent and appointing as the guardian of her estate a member of the bar of the court nominated by the Commonwealth of Pennsylvania. Judge Klein then said: "I think the family has forfeited by their conduct the right to direct who should be appointed guardian in this case, and I make the choice myself."

On May 17, 1965, counsel for the brother filed seven exceptions to the adjudication of incompetency, all but one of which relate to the appointment of the guardian and the failure to appoint the nominee of the incompetent's brother.

Exception 5 charged the court with error "in accepting the testimony of the witness for the Commonwealth when it appeared at the hearing that the said testimony was *contrived*." (Italics supplied.) There is no dispute as to the fact of incompetency or as to the debt owing to the Commonwealth. This exception has no meaning and it is dismissed as without validity and without any justification whatsoever.

From the other six exceptions it would further appear that counsel for the brother is confused as to the procedure for nominating a guardian. Attached to the

Commonwealth's petition is the proper consent form executed by the guardian whom the court appointed. He is J. Grant McCabe, 3rd, a member of the bar of this court and not counsel for the Commonwealth, as suggested at the oral argument. There was no need and no reason for taking testimony as to the qualifications of the proposed guardian, or as to whether he had any interest adverse to the estate. There was no need or reason for Judge Klein to appoint as guardian another member of the bar of this court, Raymond J. Quaglia, who was nominated by the brother. The latter is not next of kin and has no right superior to that of the Commonwealth to petition the court in an incompetency matter and to nominate a guardian. There was no evidence adduced by counsel in support of the brother's nominee as there was none respecting the one actually appointed.

The Incompetents' Estates Act of 1955 (February 28, 1956, P. L. (1955) 1154), as reenacted and amended, provides in section 301 as follows:

"The petitioner may be the alleged incompetent's spouse, a relative, a creditor, a debtor, or any person interested in the alleged incompetent's welfare."

Admittedly, the Commonwealth of Pennsylvania is a creditor and as such a proper petitioner. It is also clear that the statute does not establish any order of preference or priority among those classes entitled under the act to petition the court.

The exceptant argues that, because the incompetent's brother is in her family, he is better qualified to nominate the proposed guardian as his nominee would more likely conserve the estate. There is no sense or substance to that argument. Anyone designated by the court, particularly a member of the bar and as such an officer of the court, will have the duty to preserve the state and protect it for the benefit of its owner. In Gerlach's Estate, 127 Pa. Superior Ct. 293 (1937), it was said, at page 300:

"A feeble-minded or weak-minded person is the ward of the court appointing the guardian, and the guardian is simply its bailiff or agent in protecting him and his estate."

The exceptant cites Voshake's Estate, 125 Pa. Superior Ct. 98 (1937), and quotes from page 102 the following:

" . . . The Court should not knowingly appoint one wholly distasteful to those interested; neither should it select as guardian anyone who has, or may have, an interest adverse to that of the incompetent."

It is inconceivable that the guardian appointed by Judge Klein would be such a person. He is not the lawyer for the Commonwealth as suggested by exceptant's counsel. As guardian he is under a duty to protect the estate, to pay creditors such as the Commonwealth which in its institution is caring for the incompetent, and to do all things necessary to safeguard her property.

Exceptant also cites Coulter's Estate, 406 Pa. 402 (1962). There is nothing in that decision giving his position any support. The opinion of Mr. Justice Benjamin R. Jones reads at page 412 as follows:

"The selection of a guardian for an incompetent lies within the sound discretion of the court to which the application for such appointment has been made and an appellate court will not reverse unless it is shown that the appointing court has abused its discretion," citing cases.

There is nothing in the record before us revealing any abuse of discretion. There is not a scintilla of evidence justifying the assertion in exception no. 7 that the appointment of Mr. McCabe was "arbitrary and capricious and without foundation in law or in fact and in derogation of exceptant's rights under the Incompetents' Estates Act." Such a charge comes without any reason and with ill grace indeed from counsel

and client. A brother of the incompetent, who made no move to assist the incompetent or to arrange for her care over a period of two and a half years during which time the taxpayers of the state bore the burden of maintaining her is without moral or legal justification in making such a charge. It seems clear that counsel for Anthony Chiruck and his client are not concerned solely with the welfare of the incompetent but are primarily interested in fees and commissions.

Nor is Arthur's Case, 136 Pa. Superior Ct. 261 (1939), cited by exceptant, of any assistance to him. Therein Judge Stadtfeld, acting for a unanimous court, upheld the appointment of a guardian by decree under the Act of May 28, 1907, P. L. 292, as amended, cited Voshake's Estate, supra, and added, page 265:

"It is well established that the court is not bound to confine its ultimate selection from among those recommended by either party to the proceedings."

Judge Klein's action is abundantly supported by the record and the law. All exceptions are dismissed and the action of the hearing judge is affirmed.