## In re Rhoads

*Christopher S. Underhill*, for petitioners.
*Sam Ferguson Musser*, contra.

APPEL, *J.*, July 3, 1974—On June 14, 1971, this court entered an order adjudging Judy Jones Rhoads an incompetent person under the Incompetents' Estates Act and appointed the First National Bank of Strasburg guardian of her estate.

On May 2, 1974, the petition of Richard E. Coffin and Howard R. Coffin to have Judy Jones Rhoads declared competent was filed. A motion to dismiss without hearing has been argued and the matter is now before us for disposition.

It appears that the present petitioners, the Coffins, are defendants in a civil action instituted on behalf of Judy Jones Rhoads entered to April term, 1968, no. 4, now in the civil division of the court. The suit arises from an automobile collision which occurred in 1966. At the time of the collision and when the suit was brought, Judy Jones Rhoads was a minor. The incompetency proceedings were instituted after she had become an adult.

It appears from the civil division proceedings that on April 10, 1974, a jury having been drawn, plaintiff presented a petition to amend the complaint to reflect the appointment of the guardian of the incompetent's estate. The jury was discharged and a rule was granted. On May 2d, a petition for addi-

tional time to answer was granted to permit defendants in the civil action to petition the Orphans' Court Division for a decree of competency.

The petition which is before us asserts a belief that Judy Jones Rhoads is not now mentally incompetent and that she should so be declared, because otherwise the defenses intended to be presented in the trespass case would be "adversely affected," because the "witnesses may not be able to testify on their behalf," and "because they (defendants) may be subjected to excessive damages."

The guardian of the incompetent has questioned the legal capacity of the Coffins to seek a determination of competency.

The provisions of the Incompetents' Estates Act of February 28, 1956, P.L. (1955) 1154, as amended, 50 PS §§3301, et seq. are basically and in the main included in the Probate, Estates and Fiduciaries Code of June 30, 1972, (No. 164), 20 Pa. S. sections numbered §5501, and with numerical omissions, through §5537. That a person who has been adjudged an incompetent need not remain in that status until death is inherent in the provisions of section 5517, as follows:

"The court, upon petition and after such notice as it shall direct, may find, after a hearing at which good cause is shown, that a person previously adjudged incompetent has become competent."

The section is silent as to the identity of petitioner. Counsel has cited no Pennsylvania case which discusses the question nor has our research been productive.

It has been suggested that those individuals on whom authority is conferred by section 5511 to petition for a decree of incompetency are those who

would be proper petitioners for competency. Such persons are the alleged incompetent's spouse, a relative, a creditor, a debtor, or any person interested in the alleged incompetent's welfare. Reference to cases in which competency adjudications have been sought do not support this suggestion. In each of the following cases, petitioner was the incompetent: Sigel Appeal, 381 Pa. 603 (1955); Pearlman Appeal, 400 Pa. 350 (1960); Nagle Estate, 418 Pa. 170 (1965); Urquhart Estate, 431 Pa. 134 (1968); and Earnshaw Appeal, 187 Pa. Superior Ct. 124 (1958). In re Di Vincentes, 25 Erie 369 (1942), is the only Pennsylvania case we have found in which petitioner is a person other than the incompetent, and in that case it was the incompetent's spouse.

The present petitioners, the Coffins, come within section 5511 only as debtors or possible debtors. There is a sound basis for the inclusion of debtors for a determination of incompetency, because, in some instances and under certain circumstances, there could arise a question of whether payment to a creditor would result in a sufficient and effective discharge. If a debtor should be in doubt as to the understanding or capacity of his creditor, the procedure for determination of the doubt is available to him. The debtor of the individual who has been adjudged incompetent is not jeopardized by payment to the guardian; therefore, the basis for inclusion of a debtor as a petitioner for incompetency would not be supportive of including a debtor as a person entitled to petition for competency proceedings.

Both counsel have referred to an Oklahoma proceeding, In re Vaughn's Guardianship, 239 P. 2d 403 (1951), in support of their positions. Although

competency was there decreed on petition of a defendant in a civil suit, the facts of the case suggest that the efficacy of the initial declaration of plaintiff's incompetency was somewhat dubious. At all events, the Oklahoma statute, as do some others, provided that the application may be made by the ward or other interested party.

We note that section 5-430 of the Uniform Probate Code provides as follows:

"The protected person, his personal representative, the conservator or any other interested person may petition the Court to terminate the conservatorship."

The Probate, Estates and Fiduciaries Code refers to "any person interested" in establishing the class of petitioners for incompetency; however, unlike the above provision of the Probate Code, the interest is circumscribed to "the alleged incompetent's welfare."

We are unable to conclude from the statutory or decisional law whether defendants in a trespass action in the Civil Division are proper parties to petition for a finding of competency in the Orphans' Court Division.

Section 5517 requires that the finding of competency may be made "after a hearing at which time good cause is shown." We, therefore, examine whether the petition alleges facts which would establish good cause. Petitioners' interest is in the civil suit. They state a fear that their defense will be affected because the witnesses may not be able to testify and they may be subjected to excessive damages.

Although it is not within our province to determine competency of witnesses in the civil action,

our research suggests that the fear about witnesses is unfounded.

In Yacabonis v. Gilvickas, 376 Pa. 247 (1954), the court held that an adjudication of incompetency does not make the testimony of an adverse party incompetent. The court said:

"The court also held that the fact of alleged incompetence of the defendant and the guardianship proceedings should not have been admitted in evidence. The Act of 1887, P.L. 158, 28 PS §322, relating to competency of witnesses, applies only in cases where a party to a civil proceeding is dead or has been *adjudged* a lunatic. An adjudication of incompetency is not an adjudication of lunacy. See Henry on Pennsylvania Evidence, 1953 Revision, Vol. 2, §767. Under the circumstances, if the defense wants to excuse the absence of defendant at the trial, it must actually be shown that he is incapable of testifying."

This conclusion was applied to the unusual situation presented in Formichella Petition, 51 D. & C. 2d 584 (1971), in which a petition was presented to determine whether an adjudged incompetent was a lunatic so that adverse parties would be rendered incompetent to testify in a trespass action arising from an automobile accident. The opinion of Judge Acker, of the Mercer County Orphans' Court Division, contains a lengthy discussion of the applicable statutes, the distinctions between the various conditions of mental infirmity or incapacity, and the cases which hold that a declaration of incompetency is insufficient to prevent a person from testifying. We are of the opinion that it may fairly be concluded that petitioner should not be confronted with the Act of 1887 during the civil trial.

Whether defendants may be subjected to excessive damages is dependent, not on this court's adjudication of competency or incompetency, but on the conduct of the civil trial itself. If mental capacity is in issue as a basis for damages, then the determination thereof must be ascertained by evidence presented to a jury and not on this court's finding. As President Judge Keller said in Ryman's Case, 139 Pa. Superior Ct. 212 (1940), at page 218: "One's mental capacity is best determined by his spoken words, his acts and conduct."

We can easily recognize that the finding that plaintiff in the civil action has been declared incompetent may affect a jury's determination; however, we do not believe that the Orphans' Court Division should at this time be substituted for findings which should be made by the jury in the civil action. We believe that the fears of petitioners will be allayed by due consideration of the direction of the Supreme Court in Yacabonis, supra, page 251, as follows:

"Since the case must go back for the new trial awarded by the court, all reference to the alleged incompetency of the defendant, or the appointment of a guardian for him, or his inability to testify, should be made in offers outside the presence of the jury."

For the reasons stated, we conclude that the petition does not allege facts which would establish good cause; therefore, we dismiss the petition.

The following statement in Formichella, with modification, appears to state a conclusion which may exist in counsel's eagerness to do battle for their clients' interest:

"Finally, we do not believe that this court should be called upon immediately prior to the trial of a

case to make a determination of lunacy where the sole objective is to bar defendant from testifying. It makes the proceeding one of tactics rather than to accomplish any salutary result in the management of the incompetent or his affairs."

In the present case, the facts differ, but the appearance of "tactics" is evident. We believe that at the appropriate time the effort of counsel to have the guardian noted of record in the civil action will be successful, and that the fears of petitioners concerning an existing order of incompetency may be alleviated by the proper conduct of the civil trial. We have full confidence that such conduct will prevail.