In re Guardianship of Benjamin E.,
an alleged incapacitated person.
Rhonda P., appellant, v.
Benjamin E., appellee.

___ N.W.2d ___

Filed December 12, 2014.    No. S-14-030.

1. **Guardians and Conservators: Appeal and Error.** An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record made in the county court.

2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Attorney and Client.** A lawyer shall abide by a client's decisions concerning the objectives of representation and shall consult with the client as to the means by which they are to be pursued.

4. ____. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation.

5. **Attorney and Client: Mental Competency.** In representing a client with diminished capacity, a lawyer may take reasonably necessary protective action if the lawyer believes that the client is at risk of substantial physical, financial, or other harm unless action is taken and the client cannot adequately act in his or her own interest.

6. **Words and Phrases.** A decision is arbitrary when it is made in disregard of the facts or circumstances and without some basis which would lead a reasonable person to the same conclusion.

7. ____. A capricious decision is one guided by fancy rather than by judgment or settled purpose.

8. **Decedents' Estates: Guardians and Conservators: Legislature: Intent.** Neb. Rev. Stat. § 30-2627(b)(4) (Reissue 2008) evidences a legislative preference that a parent of an incapacitated person be appointed guardian over a person with no priority.

9. **Evidence: Records: Appeal and Error.** A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered.

Appeal from the County Court for Lancaster County: Thomas W. Fox, Judge. Reversed and remanded for further proceedings.

Steffanie Garner Kotik, of Kotik & McClure Law, for appellant.

Chris Blomenberg, and Michael Milone, Senior Certified Law Student, of McHenry, Haszard, Roth, Hupp, Burkholder & Blomenberg, P.C., L.L.O., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## INTRODUCTION

Rhonda P., the mother of an incapacitated adult, appeals from an order of the county court appointing an unrelated individual as the adult's guardian. Although we find no merit to her contention that the incapacitated adult's court-appointed attorney committed professional misconduct, we agree that the county court erred in passing over her statutory priority for appointment.[1] Without specific findings, any meaningful explanation, or a record establishing any apparent basis for deviating from the statutory priority, the appointment was arbitrary and capricious. We reverse the judgment and remand the cause for further proceedings.

## BACKGROUND

### Incapacitated Adult

Benjamin E. is a 22-year-old incapacitated adult. He was born with a genetic condition, apparently relating to his chromosomes, and is unable to hear or speak. According to Rhonda, he is in need of "24-hour watch." At the guardianship hearing, the parties stipulated that Benjamin was in need of a guardian.

### Petition for Appointment of Guardian

On July 1, 2013, Rhonda filed a petition for the appointment of a guardian for Benjamin. In the petition, she alleged that an emergency existed because Benjamin would turn 21 years old in mid-July and she feared he would leave his group home without a guardianship in place. Rhonda nominated

---

[1] See Neb. Rev. Stat. § 30-2627 (Reissue 2008).

herself as guardian. She was Benjamin's sole surviving parent, because his father had passed away in November 2006.

The county court appointed Douglas Hand to act as guardian ad litem for Benjamin. Hand recommended that the court appoint an attorney to represent Benjamin's interests. Although no order of appointment appears within the record, an attorney represented Benjamin at the guardianship hearing.

### Evidence at Guardianship Hearing

At the guardianship hearing, much of the testimony concerned Benjamin's former placement in the home of Sharmon Shireman. Benjamin was placed in Shireman's home when he was 16 years old and remained in her care for 5 years. He was removed from Shireman's home in July 2013. At the time of Benjamin's removal, Shireman was an extended family home provider through Region V Services (Region V).

Rhonda testified that Benjamin's removal was prompted by an allegation of abuse made by a friend of Shireman's. Specifically, the friend alleged that Benjamin was being left in his "pull-up" for 12 or 24 hours at a time. However, Rhonda refuted the allegation. She explained that she had unlimited access to Shireman's home and that she never observed any concerns. And Rhonda stated that if Benjamin was left in his pull-up for extended periods of time, she would have noticed because his skin would have turned red and raw. Additionally, she testified that she was informed by Region V that the allegation was unfounded.

Leslie Walters, Benjamin's community support coordinator with Region V, testified that the allegation against Shireman was made by Shireman's daughter and her daughter's "life partner." Walters was not permitted to testify as to the specific allegation of abuse. Benjamin was removed from Shireman's care and placed into a group home with an available bedroom. Region V terminated its contract with Shireman the next day.

Walters further testified as to other concerns regarding Shireman's care of Benjamin. During Benjamin's placement with Shireman, she relocated to four different locations.

And it was always unclear to Walters who was residing in Shireman's home. Shireman's son was in and out of her home at various times. And a grandson resided with Shireman for a period of time when she was living in a mobile home. Additionally, Walters recalled a girl living with Shireman that she claimed to be caring for. Walters further suggested that criminal charges had been filed against Shireman or someone residing in her home, although Walters and Region V had not been made aware of the charges.

Walters was also asked if she had any concern whether Shireman had provided adequate clothing for Benjamin. Walters replied that Benjamin was always appropriately dressed for the weather, but that Shireman would complain of not receiving sufficient funds to buy clothing or to pay for Benjamin's room and board. Walters explained that funds for Benjamin's clothing and room and board came from his Social Security benefits, of which Rhonda was the payee. And since Benjamin began residing in the group home, Region V had requested additional clothing from Rhonda, which it had not yet received.

However, Walters' knowledge of Rhonda and Benjamin's relationship was limited. She testified that she had observed Rhonda and Benjamin interact only a couple of times at meetings. Walters recalled one particular meeting during which Rhonda attempted to encourage Benjamin to stay on task and the two hugged. Regarding her own relationship with Rhonda, Walters described their communication as tense and limited. However, Walters affirmed that an ongoing relationship with Rhonda could be maintained if Benjamin remained in Region V's care.

As to Benjamin's progress in the group home, Walters testified that she had observed improvement in several areas. Benjamin had experienced success with toilet training and bathing and had developed a strong connection with one of his roommates. Walters summarized his improvement by stating, "He's just done a lot of things that I guess I wasn't aware that he had done ever before." Walters opined that a group home setting was appropriate for Benjamin and recommended that he continue in such a setting.

Rhonda's testimony, however, was less favorable of Region V and Benjamin's experience in the group home. Rhonda testified that Benjamin had sustained an injury to his toe, rendering it "about ready to fall off," and numerous "scrapes" to his knees. She iterated that she had never received as many accident reports within the 5 years that Benjamin lived with Shireman as she had received recently. She further claimed that Region V failed to undertake required monthly "book works and stuff" while Benjamin lived with Shireman and that Walters was rude to her, would not call her, and contacted her only through text messages sent late at night.

Rhonda testified that based upon her concerns, she planned to remove Benjamin from Region V's care if appointed guardian. She stated that she would maintain his placement in a group home, but with a service provider other than Region V. However, during cross-examination, Rhonda was asked if she would return Benjamin to Shireman's care if such an option were available. Rhonda replied: "If [Shireman] passed one of the other [service providers] and they thought she was good enough, yes." But she later testified that if the service provider believed a group home was better for Benjamin, she would maintain him in such a setting.

Rhonda was further asked if she had ever discussed returning Benjamin to Shireman's care with Benjamin's service coordinator with the Department of Health and Human Services. Rhonda confirmed that such a discussion had taken place. However, she claimed that the service coordinator informed her that there was no reason Shireman could not be approved to care for Benjamin.

As to Rhonda's fitness to be Benjamin's guardian, she testified that she would be the best guardian because she had been "his voice since the day he was born." She was familiar with his moods and had taken care of him since birth. She also "made sure nothing's ever happened to him," and she was there for him if something went wrong. And in her rebuttal testimony, she affirmed that she understood the concerns regarding Shireman and that she would take those concerns into consideration. She further stated that she would work with

the group of people providing care for Benjamin and consider their concerns as well.

Kendra Augustine was called to testify by Benjamin's appointed attorney and affirmed that she was willing to serve as Benjamin's guardian. Augustine explained that she was familiar with Benjamin because she had been employed as his support worker with Region V for 5 years, ending in 2009. During her employment with Region V, Augustine had frequent contact with Benjamin. She was with him in the morning Monday through Friday and picked him up from school three to four times per week. She also provided respite care one weekend per month, which lasted from Friday through Monday.

As to Rhonda's interaction with Benjamin, Augustine testified that the nature of the interaction depended upon the day. Some days there would be "really good interaction," and other days, Rhonda would be "stressed." Augustine described that Rhonda had "a lot going on" with her other children and that "she kind of would do her own thing," knowing that Benjamin was with Augustine. When asked whether she had ever been concerned for Benjamin's safety with Rhonda, Augustine responded that there were two occasions when Benjamin's shoes needed to be refitted and that it seemed to take Rhonda "a very long time" to get Benjamin into the necessary appointments.

Augustine also described one occasion when she went to Shireman's home in January 2009. Augustine observed that there were several people and two pit bull dogs in the home. She further observed that there were not many items in Benjamin's bedroom, but that he had a bed, a dresser, and clothing. When asked whether she saw any concerns in Shireman's home, Augustine responded that she did not.

Lastly, the county court received testimony from Hand, Benjamin's guardian ad litem. Hand testified that he met with Benjamin on one occasion in Shireman's residence in order to ascertain whether he needed a guardian. But Hand was unable to communicate with him. Both Rhonda and Shireman were present, and Rhonda informed him that she wanted to

be Benjamin's guardian and to maintain his placement with Shireman. At that time, Hand determined that Rhonda would be an appropriate guardian.

However, Hand was later contacted by Region V and the Department of Health and Human Services with concerns regarding Benjamin's living arrangement. And Hand's opinion as to an appropriate guardian subsequently changed. He testified that his current preference was for an independent third party to serve as guardian. He further opined that Benjamin should remain in a group home setting. And he recommended that if Rhonda were appointed guardian, she be restricted from placing Benjamin in Shireman's care.

## County Court's Order

The county court entered an order finding that Benjamin was an incapacitated person and in need of a full guardianship. The court appointed Augustine as guardian. But it neither made findings nor provided an explanation for passing over Rhonda.

Rhonda filed a timely notice of appeal, and the case was assigned to the Nebraska Court of Appeals' docket. We moved the case to our docket pursuant to statutory authority.[2]

## ASSIGNMENTS OF ERROR

Rhonda assigns as error, reordered and restated, (1) alleged professional misconduct committed by Benjamin's appointed attorney in his representation of Benjamin and (2) the county court's appointment of Augustine as Benjamin's guardian over Rhonda's statutory priority.

## STANDARD OF REVIEW

[1,2] An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record made in the county court.[3] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[3] *In re Conservatorship of Gibilisco*, 277 Neb. 465, 763 N.W.2d 71 (2009).

by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[4]

## ANALYSIS

We first address Rhonda's allegation that the attorney appointed to represent Benjamin committed professional misconduct. Finding this allegation to be without merit, we then turn to her assertion that the county court erred in appointing Augustine as Benjamin's guardian over Rhonda's statutory priority.

### Professional Misconduct

Rhonda asserts that Benjamin's appointed attorney violated applicable rules of professional conduct by nominating Augustine to be Benjamin's guardian. She claims that Benjamin's attorney was not representing Benjamin's wishes and direction in making the nomination, in violation of Neb. Ct. R. of Prof. Cond. § 3-501.2(a) (rev. 2008). Rhonda further asserts that Benjamin's attorney consulted with Region V in nominating Augustine, but that Region V had a financial incentive to prevent Rhonda from being appointed Benjamin's guardian.

[3] Section 3-501.2(a) provides, in pertinent part, that "a lawyer shall abide by a client's decisions concerning the objectives of representation and . . . shall consult with the client as to the means by which they are to be pursued." This case presents our first opportunity to examine § 3-501.2(a) in the context of a client who is an incapacitated adult clearly in need of a guardian.

Although Rhonda asserts that Benjamin's attorney failed to follow his wishes and direction, she acknowledges in her brief that Benjamin was unable to communicate his wishes and direction to his appointed attorney. Recognizing this problem, she shifts her argument. She argues that because Benjamin's attorney was unable to ascertain Benjamin's wishes and direction, the rule prohibited his attorney from taking any action on his behalf. We disagree.

---

[4] *Id.*

[4,5] Rhonda's argument is contrary to the spirit and intent of our rules of professional conduct. Section 3-501.2(a) also states that "[a] lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation." And Neb. Ct. R. of Prof. Cond. § 3-501.14(b) states that in representing a client with diminished capacity, a lawyer may take reasonably necessary protective action if the lawyer believes that the client is at risk of substantial physical, financial, or other harm unless action is taken and the client cannot adequately act in his or her own interest.

Further guidance is provided by the Restatement (Third) of the Law Governing Lawyers. The Restatement provides that a lawyer representing a client with diminished capacity must act in the best interests of the client and pursue the lawyer's reasonable view of the client's objectives or interests as the client would define them if able to make adequately considered decisions on the matter, even if the client expresses no wishes or gives contrary instructions.[5] There is nothing in the record indicating that Benjamin's appointed attorney was motivated by anything other than Benjamin's best interests in nominating Augustine. And there is no indication that Augustine's nomination was contrary to Benjamin's wishes or direction, had Benjamin been able to communicate with his attorney.

We also reject Rhonda's assertion that Benjamin's appointed attorney committed professional misconduct by consulting with Region V in his representation of Benjamin. As Benjamin's caregiver, Region V had particular knowledge of his circumstances and needs. Although Region V may have possessed a financial incentive for Benjamin to remain in its care, there is no evidence that such incentive influenced Benjamin's attorney in his nomination of Augustine. This assignment of error is wholly without merit.

APPOINTMENT OF GUARDIAN

Rhonda asserts that the county court erred in appointing Augustine as Benjamin's guardian, because it passed over

---

[5] See Restatement (Third) of the Law Governing Lawyers § 24(1) and (2) (2000).

Rhonda's statutory priority. Rhonda argues that the appointment of Augustine was arbitrary because there was no basis to support a finding that it was in Benjamin's best interest to pass over her statutory priority. She further points to the county court's failure to make any specific finding that such action was in Benjamin's best interest.

Section 30-2627 sets forth the requisites for who may serve as guardian for an incapacitated person. With certain exceptions not relevant here, § 30-2627(a) provides: "Any competent person . . . may be appointed guardian of a person alleged to be incapacitated . . . ." Subsection (b) of § 30-2627 sets forth the priority for appointment for persons who are not disqualified and "exhibit the ability to exercise the powers to be assigned by the court." As Benjamin's mother, Rhonda fell within the category of persons having fourth priority— "[a] parent of the incapacitated person . . . ."[6] It is undisputed that Augustine had no priority under § 30-2627(b). However, § 30-2627(c) provides in part that "[t]he court, acting in the best interest of the incapacitated person, may pass over a person having priority and appoint a person having lower priority or no priority."

To the extent that Rhonda's argument may be understood as asserting that the county court was required to make a specific finding as to Benjamin's best interest, we reject her argument. We do not interpret § 30-2627(c) as requiring a specific finding that it is in the best interest of the incapacitated person to pass over a person with priority. The plain language of that subsection does not require any specific finding as to the best interest of the incapacitated person.[7] Rather, it permits a court to pass over a person with priority when the best interest of the incapacitated person requires such a result. And we

---

[6] See § 30-2627(b)(4).

[7] Compare *State ex rel. Amanda M. v. Justin T.*, 279 Neb. 273, 777 N.W.2d 565 (2010) (holding that court was not required to make specific finding as to best interests in creating parenting plan under Parenting Act), with *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007) (finding abuse of discretion when court failed to make specific finding that joint custody was in child's best interests when specific finding was required by Neb. Rev. Stat. § 42-364(5) (Cum. Supp. 2006)).

further construe the county court's order as implicitly find-
ing that passing over Rhonda's priority was in Benjamin's
best interest.

[6,7] However, we agree that the appointment of Augustine
as Benjamin's guardian was arbitrary and capricious. A deci-
sion is arbitrary when it is made in disregard of the facts
or circumstances and without some basis which would lead
a reasonable person to the same conclusion.[8] A capricious
decision is one guided by fancy rather than by judgment or
settled purpose.[9]

[8] Section 30-2627(b)(4) evidences a legislative prefer-
ence that a parent of an incapacitated person be appointed
guardian over a person with no priority. But the county court
neither made specific findings nor provided explanation for
its deviation from this preference. And the record provides no
basis which would lead a reasonable person to conclude that
passing over Rhonda's statutory priority was in Benjamin's
best interest.

At the guardianship hearing, Benjamin's appointed attorney
argued that an independent third party should be appointed
Benjamin's guardian because Rhonda had permitted Benjamin
to remain in Shireman's care. But no evidence was presented
at the hearing establishing that any harm came to Benjamin
while in Shireman's care. Rhonda refuted the allegation of
abuse made against Shireman and testified that Region V
informed her that the allegation was unfounded. And she
further testified that she was informed by a service coordina-
tor with the Department of Health and Human Services that
there was no reason Shireman could not be approved to care
for Benjamin.

Although Walters indicated that Shireman made multiple
moves and appeared to have several people residing in her
home, Augustine testified that she did not observe any concerns
when she visited Shireman's home in 2009. Although Walters
testified that Region V had not been notified of "some charges"
regarding Shireman or other occupants of Shireman's home,

---

[8] *In re Water Appropriation A-4924*, 267 Neb. 430, 674 N.W.2d 788 (2004).

[9] *Id.*

this did not warrant passing over Rhonda's priority. Walters did not specify the nature of the charges or against whom the charges were made. Nor did she indicate that Rhonda was aware of the charges.

Further, we do not construe Rhonda's testimony as indicating an unequivocal intent to return Benjamin to Shireman's care. Rhonda responded affirmatively when asked if she would return Benjamin to Shireman's care, but she explained that she would place Benjamin with Shireman only if the service provider approved the placement. And she later testified that she would maintain Benjamin's placement in a group home if the service provider believed a group home was better for him. Additionally, she testified that she understood the concerns regarding Shireman and that she would take those concerns into consideration.

Similarly, Rhonda's intention to remove Benjamin from Region V's care did not warrant passing over her priority. Although Walters testified that she had observed Benjamin improve in several areas, no evidence was presented linking such improvement to Region V or Benjamin's placement in the group home. On cross-examination, Walters admitted that she did not know why Benjamin was "acting the way he was acting or is acting how he's acting now." Thus, Walters could not attribute Benjamin's improvements to his residence in the group home rather than in Shireman's care.

And we see no evidence in the record establishing that Rhonda was unfit to serve as Benjamin's guardian. Rhonda testified that she had been Benjamin's voice and protector since his birth and understood his moods. Walters and Augustine each described positive interaction between Rhonda and Benjamin. While Walters and Augustine indicated that Rhonda had delayed in responding to requests for clothing or footwear, such testimony was insufficient to establish that Rhonda was unfit to be Benjamin's guardian.

In summary, without specific findings, a meaningful explanation, or a record demonstrating grounds to support the appointment of Augustine as guardian in derogation of Rhonda's priority, the appointment was arbitrary and capricious. Rhonda was granted priority to be Benjamin's guardian by § 30-2627(b).

The record fails to disclose any basis which would lead a reasonable person to conclude that deviating from the statutory priority was in Benjamin's best interest.

[9] We acknowledge that the county court may have taken reports from Hand into consideration in appointing Augustine, but such reports were not offered into evidence at the guardianship hearing. And contrary to Rhonda's assertion at oral argument, we find nothing in the bill of exceptions to indicate that the reports compose a part of the evidentiary record on appeal. We have consistently stated that a bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered.[10]

## CONCLUSION

We reject Rhonda's allegation of professional misconduct, but we agree that the county court erred in appointing Augustine as Benjamin's guardian without specific findings, any explanation for bypassing Rhonda's statutory priority, or any reason readily apparent in the evidentiary record. Therefore, we reverse the appointment of Augustine as guardian and remand the cause for further proceedings. We recognize that the parties may have erroneously assumed that materials otherwise available to the court were part of the evidentiary record. And we acknowledge that § 30-2627(c) empowers the court, "acting in [Benjamin's] best interest," to pass over Rhonda's priority. Thus, on remand, the county court may expand the evidentiary record. Upon either the existing or an expanded record, the court shall enter an order appointing a guardian for Benjamin in conformity with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

_____

[10] *Ottaco Acceptance, Inc. v. Huntzinger*, 268 Neb. 258, 682 N.W.2d 232 (2004).

STEPHAN, J., concurring.

I agree that the county court erred in bypassing Rhonda's statutory priority without articulating any reasons for doing

so. I write separately, however, to emphasize certain factors which I believe the court should consider when determining whether there is a "basis which would lead a reasonable person to conclude that deviating from the statutory priority was in Benjamin's best interest."

Neb. Rev. Stat. § 30-2627 (Reissue 2008) clearly gives Rhonda, as the "parent of the incapacitated person," statutory priority to be appointed as Benjamin's guardian. It authorizes the court to "pass over" Rhonda and appoint a guardian having lower priority or no priority only when the court is "acting in the best interest of the incapacitated person." Section 30-2627 does not offer any guidance on how a court is to determine what the "best interest of the incapacitated person" is.

It is undeniable that Benjamin's welfare is the paramount consideration in the selection and appointment of his guardian.[1] But § 30-2627 gives Rhonda priority, and that priority should not be lightly disregarded. Historically, persons with familial ties to an incapacitated person were given priority as guardians, because it was presumed that such persons were more likely to be solicitous of the incapacitated person's welfare than would someone else.[2] That historical presumption seems particularly apt in the circumstances of this case, where the record shows that Rhonda has been Benjamin's primary caregiver and support since birth. I would argue that absent a showing that Rhonda is less likely to be solicitous of Benjamin's needs than someone with lower or no priority, the statutory priority should be recognized.

Rhonda's statutory right to priority also has constitutional underpinnings. In guardianship proceedings involving minor children, we recognize and apply the parental preference principle.[3] The parental preference principle arises from the substantive component of the Due Process Clause of the

---

[1] See, *In re Guardianship of Lyon*, 140 Neb. 159, 299 N.W. 322 (1941); 57 C.J.S. *Mental Health* § 146 (2007).

[2] See, *Matter of Conservatorship of Browne*, 54 Ill. App. 3d 556, 370 N.E.2d 148, 12 Ill. Dec. 525 (1977); *Arthur's Case*, 136 Pa. Super. 261, 7 A.2d 55 (1939).

[3] See *In re Guardianship of D.J.*, 268 Neb. 239, 682 N.W.2d 238 (2004).

14th Amendment, which protects the "fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition.'"[4] The U.S. Supreme Court has recognized that "[t]he liberty interest . . . of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests . . . ."[5] The parental preference principle is based on an acknowledgment that parents and their children have a recognized unique and legal interest in, and a constitutionally protected right to, companionship and care as a consequence of the parent-child relationship, a relationship that, in the absence of parental unfitness or a compelling state interest, is entitled to protection from intrusion into that relationship.[6] The parental preference principle protects the parent's right to the companionship, care, custody, and management of his or her child and the child's reciprocal right to be raised and nurtured by a biological or adoptive parent.[7] We have even stated that establishment and continuance of the parent-child relationship is the most fundamental right a child possesses.[8]

Here, of course, Benjamin is not a minor, and thus our prior decisions regarding the constitutional protections of the parental preference doctrine are not directly applicable to the question of how to treat Rhonda's statutory priority. Notably, however, other courts have examined whether the parental preference principle should extend to protect the relationship between parents and their adult children. A number of federal circuit courts have addressed the issue in the context of § 1983 actions brought by parents of adult children wrongfully killed by state action (such as a shooting by a police officer).[9] The

---

[4] *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997).

[5] *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000).

[6] *In re Guardianship of D.J., supra* note 3.

[7] *Id.*

[8] *Id.*

[9] See, *Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005) (surveying cases); 42 U.S.C. § 1983 (2012).

issue presented in these cases is whether a parent can receive compensation for the wrongful loss of a relationship with an adult child. Courts have declined to extend the parental preference principle and recognize a compensable right to a continued relationship with an adult child in these cases based on two reasons: (1) The state action at issue was not deliberately directed at severing the parent-child relationship, and (2) a parent's right to make critical child-rearing decisions concerning the care, custody, and control of minors necessarily ends when the child begins to assume critical decisionmaking responsibility for himself or herself.[10]

Here, the state action of appointing a guardian other than Rhonda is more deliberately directed at affecting the parent-child relationship. And at least one circuit court has questioned whether a parent's right to make critical child-rearing decisions ever ends when the child is chronologically an adult but remains dependent upon parents or other caregivers for his or her physical and emotional needs.[11] I therefore do not think these cases are dispositive on the issue of whether the parental preference principle applies when considering the scope of Rhonda's statutory priority to be appointed Benjamin's guardian.

I am aware of only one case that has directly addressed whether the parental preference principle applies when a parent wishes to be appointed the guardian of an adult child who is incapacitated. In *In re Tammy J.*,[12] a lower court appointed a public guardian the legal guardian of an adult woman who was developmentally disabled and functioned at the level of an 8- or 9-year-old. The woman's parents argued the appointment was improper absent a finding that they were unfit to be her guardians, because it violated the parental preference principle and their constitutional right to a continued relationship with their daughter. As in Nebraska, the relevant statute gave the parents priority to be appointed guardians, but the priority

---

[10] *Russ, supra* note 9; *McCurdy v. Dodd*, 352 F.3d 820 (3d Cir. 2003).

[11] See *McCurdy, supra* note 10.

[12] *In re Tammy J.*, 270 P.3d 805 (Alaska 2012).

could be disregarded by the court "[w]hen in the best interest of the incapacitated person . . . ."[13]

The Alaska court recognized that the U.S. Supreme Court has never taken a position on whether the substantive due process rights of parents extend to relationships with adult children and that the Court has been historically reluctant to expand the concept of substantive due process. It further recognized the federal circuit courts that have refused to expand the parental preference principle in the context of § 1983 actions, as noted above. It distinguished those cases easily, however, reasoning that "the factual and procedural surroundings of these cases are distant from those of the present case."[14] It recognized that the issue before it was "more challenging": Does a parent have a constitutionally protected right to make decisions regarding the care, custody, and control of an adult child who, due to developmental disabilities, possesses the general competencies of a young minor?[15]

In wrestling with this question, the Alaska court reasoned that caring for a developmentally disabled adult is not a form of "'child rearing'" and that there is less risk of preventing the passing on of family heritage by interfering in a relationship with a developmentally disabled adult than when interfering in decisions about the upbringing of a minor child.[16] It further found that the rights of minor children are generally subject to the wishes of their parents, but that adult individuals with disabilities have independent rights to equality of opportunity, independent living, and personal and economic self-sufficiency. It reasoned that when tension exists between the parental interest in maintaining control over the care and custody of a developmentally disabled adult and that adult's interest in maximum participation in society and maximum self-sufficiency, the adult's interest must be paramount. Based on this rationale, it declined to extend the parental preference

---

[13] Alaska Stat. § 13.26.145(f) (2004).

[14] *In re Tammy J., supra* note 12 at 814.

[15] *Id.*

[16] *Id.* at 815.

doctrine to invalidate the appointment of the public guardian instead of the parents.

I do not quarrel with the result reached by the Alaska court. It is right and just that our state's goals regarding individuals with disabilities should be to promote maximum equality of opportunity, participation in society, independent living, and self-sufficiency. Individuals with disabilities are not perpetual children, and thus direct application of the parental preference principle and its requirement that the parental relationship be protected absent a showing of unfitness of the parent is not proper in the circumstances of this case, where Benjamin is an adult.

Nevertheless, some of the basic concepts underlying the parental preference doctrine continue to apply in a situation where an adult child is incapacitated and someone has to make continuing decisions about his or her everyday care and living situations.[17] This is particularly so here, where the record demonstrates that Rhonda has been Benjamin's caregiver and has provided for his special needs his entire life. She, simply stated, has a unique and special relationship with him. In my view, the uniqueness of this relationship should be considered in determining the scope of her statutory priority and in considering the best interest of Benjamin.

Given the nature of the relationship between Rhonda and Benjamin and the historical fact that next of kin are presumed to act in the best interest of an incapacitated person, I do not think the court should pass over Rhonda's statutory priority absent a showing that her desires or wishes for Benjamin will significantly hinder his ability to participate in society, live independently, or maximize his self-sufficiency. Without such a showing, the simple fact that another person, without statutory priority, may be slightly better at developing and maintaining Benjamin's best interest should not be enough to trump the statutory priority based on the parental relationship.

---

[17] See *McCurdy, supra* note 10.