J-A22019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE ESTATE OF: ELIZABETH W. WINSTANLEY, AN INCAPICITATED PERSON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: DAVID WINSTANLEY AND ELIZABETH A. WINSTANLEY | No. 13 MDA 2016 |

Appeal from the Order Entered December 11, 2015
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 1202 of 2014

BEFORE:  GANTMAN, P.J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.               **FILED OCTOBER 21, 2016**

Appellants, David Winstanley and Elizabeth Winstanley, appeal from the order entered in the Court of Common Pleas of Lancaster County declaring their mother, Elizabeth W. Winstanley, an incapacitated person. Appellants argue that the court erred by finding clear and convincing evidence that Winstanley was a totally incapacitated person. We affirm.

The orphans' court accurately summarized the history of the case. **See** Orphans' Court Opinion, dated 3/4/16, 1-19. Therefore, a detailed recitation of the factual and procedural history is unnecessary. "Our standard of review is well-settled in cases involving [] an [O]rphans' [C]ourt decision." **In re Estate of Cherwinski**, 856 A.2d 165, 167 (Pa. Super. 2004). As we have explained:

The findings of a judge of the [O]rphans' [C]ourt division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence. However, we are not limited when we review the legal conclusions that Orphans' Court has derived from those facts.

*Id*. (quoting *In re Estate of Schultheis*, 747 A.2d 918, 922 (Pa. Super. 2000)).

On appeal, Appellants have averred that the trial court failed to weigh the need for guardianship against Winstanley's support system, and that there was not clear and convincing evidence to support a finding of incapacity. The orphans' court, in its March 4, 2016 opinion, has aptly reviewed Appellants' claims and disposed of both of these arguments on the merits. We have reviewed the parties' briefs, the relevant law, the certified record, and the well-written opinion of the Honorable Jay J. Hoberg. We have determined that the orphans' court's opinion comprehensively disposes of Appellants' issues on appeal, with appropriate references to the record and without legal error. Therefore, we will affirm based on this opinion. *See* Orphans' Court Opinion, dated 3/4/16.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/21/2016

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE:                                        :
    ELIZABETH W. WINSTANLEY        :        2014-1202
    an incapacitated person        :

### OPINION SUR APPEAL

On December 23, 2015, Douglas Earl, Esquire, on behalf of David Winstanley and

Elizabeth A. Winstanley, two of the three adult children Elizabeth W. Winstanley, filed an appeal

of the Decree entered on December 11, 2015 finding that Mrs. Elizabeth W. Winstanley

(hereinafter Mrs. Winstanley) remains incapacitated. On December 31, 2015, Candace Beckett,

Esquire, on behalf of Mrs. Winstanley, also filed an appeal from the Decree entered on December

11, 2015[1]. The instant appeal is the second time an appeal has been taken in this matter, the first

appeal having been filed in 2014 challenging the Court's July 23, 2014 adjudication of Mrs.

Winstanley as a totally incapacitated person and which was withdrawn by counsel for Mrs.

Winstanley at that time, who was Matthew Menges, Esquire. A complete and lengthy procedural

history is therefore necessary for an understanding of the current situation as it relates to Mrs.

Winstanley.

Mrs. Winstanley and her husband, Robert, moved to Lancaster County in order to make

Masonic Village their residence. Masonic Village, also called Masonic Homes, offers a variety

of levels of care including independent living, personal care or skilled care as well as nursing

---

[1]It is noted that Attorney Beckett's Proof of Service of her Notice of Appeal fails to
demonstrate that she served Mrs. Winstanley's current guardian, Patricia Maisano with IKOR.
While Mrs. Maisano has subsequently secured Attorney Minnich as her counsel for appeal
purposes, at the time of the filing of the Proof of Service of her Notice of Appeal, Attorney
Beckett served Attorney Minnich in his role as counsel for Robert E. Stump and RES Consulting.



care. At the time, none of their family lived in Lancaster County. On February 9, 2012, a Power of Attorney was executed by Mrs. Winstanley, naming her husband as Agent with her son, Richard Winstanley as successor Agent[2]. Mr. and Mrs. Winstanley lived at Masonic Homes in their own independent living apartment for approximately 6 years before Mr. Winstanley became ill. Mr. Winstanley was moved to a higher level of nursing care as his condition declined and Mrs. Winstanley accompanied him.

On May 22, 2014, Mrs. Winstanley had a Neuropsychological Evaluation performed at Johns Hopkins by Dr. Jason Brandt, Ph.D[3]. She had been referred for the evaluation by her attorney, Peter Kraybill. See page 1 of the Johns Hopkins Report. She was transported to Johns Hopkins by a staff member at Masonic Homes. The report states that Mrs. Winstanley displays "cognitive and functional impairments. Most notable among these is a severe impairment in episodic memory. She displays marked deficits in the ability to learn and retain new information." Id. at page 3. Dr. Brandt found that the impairment in judgement demonstrated by Mrs. Winstanley through the testing made him assert that she did not have "the capacity to withdraw the authorities she has delegated to her POA." Id. at page 4.

---

[2] The 2012 Power of Attorney named their other son, David Winstanley to serve as Agent if Richard Winstanley was unwilling or unable to serve. If neither David nor Richard could serve, their daughter, Elizabeth A. Winstanley was then named as Agent. See Exhibit A, Petition for Appointment of Guardian of the Person and Estate on An Alleged Incapacitated Person filed June 10, 2014.

[3] A copy of this report was provided to the Court prior to the initial incapacity hearing. See Exhibit B, Petition for Appointment of Guardian of the Person and Estate on An Alleged Incapacitated Person filed June 10, 2014. Furthermore, it was referred to in the Final Decree of July 23, 2014. A copy of this report is also attached to the Second Amended Petition of David Winstanley and Elizabeth A. Winstanley for Emergency Review Hearing dated September 3, 2015.

In June, 2014, Elizabeth A. Winstanley, who was residing in Australia, returned home and had her mother, Mrs. Winstanley, execute a new Power of Attorney naming herself as Agent. The new Power of Attorney was executed June 15, 2014[4]. Elizabeth A. Winstanley subsequently returned Australia and continued to live there until November 11, 2015 when she moved to Annapolis, Maryland. Mr. Robert Winstanley died on June 26, 2014[5].

On June 10, 2014, an initial Petition for Incapacity was filed by Peter Graybill, Esquire on behalf of Richard Winstanley, one of the sons of Mrs. Winstanley. Richard Winstanley was the named alternate Agent for his mother in the 2012 Power of Attorney. The Petition for Incapacity was filed as a result of the May 22, 2014 evaluation completed by Johns Hopkins. After the Petition was filed, Richard Winstanley discovered that Mrs. Winstanley had executed a new Power of Attorney naming her daughter, Elizabeth A. Winstanley, as her Agent. Elizabeth A. Winstanley filed a response to the Petition for Incapacity wherein she denied that her mother lacked capacity but agreeing that if her mother was found to be incapacitated, that "the Court should appoint a neutral third party guardian, who is not motivated by their own self interests or other interests adverse to those of Elizabeth W. Winstanley." See ¶ 16., Response to the Petition for Appointment of Guardian of the Person and Estate of an Alleged Incapacitated Person filed

---

[4]The June 15, 2014 Power of Attorney is attached to Attorney Brillhart's Response to the Petition for Appointment of Guardian of the Person and Estate of an Alleged Incapacitated Person filed July 10, 2014 on behalf of his client at the time, Elizabeth A. Winstanley. In fact, Elizabeth A. Winstanley testified that she returned to the United States of America on June 15, 2014. See N.T. 10/14/15, p. 183, l.21.

[5]As of the October 14, 2015 hearing, no burial or memorial service had been held for Robert Winstanley. Mrs. Winstanley admitted that there has never been closure with his passing. N.T. 10/14/15, p. 105, l. 17-p. 106, l.14. This fact is highly troubling to this Court as there have been on-going concerns about Mrs. Wintanley being depressed since the passing of her husband. Mr. and Mrs. Winstanley had been married for 72 years.

July 10, 2014. David Winstanley filed his own responsive pleading to the Petition for Incapacity wherein he joined with his sister's Response and asserted that Richard Winstanley should not be appointed as a guardian for Mrs. Winstanley as he is "an alcoholic and known elder abuser. . . ." See ¶4, Response to Petition for Appointment of Guardian of the Person and Estate of an Alleged Incapacitated Person filed July 17, 2014.

On June 16, 2014, the Court appointed Patricia Dunlevy Williams, Esquire as counsel for Mrs. Winstanley, to ensure that she had independent legal representation in the proceedings. Attorney Williams was present at all chambers conferences and all hearings involving Mrs. Winstanley through the initial finding of incapacity. A hearing on whether Mrs. Winstanley was incapacitated was held on July 17, 2014. Present at the time of the hearing was Mrs. Winstanley with her counsel, Attorney Williams; son, Mr. David Winstanley, who represented himself *pro se* at that proceeding; Attorney Graybill; Attorney Brilhart, who represented daughter, Ms. Elizabeth A. Winstanley; and, son, Mr. Richard Winstanley.

At the initial hearing on July 17, 2014, the Court heard the testimony of Dr. Mast who was the associate medical director at Masonic Village and the treating physician for Mrs. Winstanley. N.T. 07/17/14, p. 7, ll. 17-22. At the time of his testimony, Dr. Mast had been Mrs. Winstanley's treating physician for approximately one year and saw Mrs. Winstanley between one to three times a month. Id. at ll. 20-25. Dr. Mast was also helping to manage Mr. Winstanley's care at the same time. Id. at p. 8, ll. 14-19. Dr. Mast testified that Mrs. Winstanley's mood tends "to be quite variable depending on which family member she has recently talked to. Conversations that distress her, she tends to focus on them for a day or so before she forgets the issue at hand. And it tends to affect her significantly." Id. at p. 9, l. 230- p.

4

10, l. 3. Dr. Mast also found Mrs. Winstanley had "significant cognitive deficits with respect to short-term recall and executive function." Id. at p. 9, ll. 16-17.

In the opinion of Dr. Mast, Mrs. Winstanley was totally incapacitated and needed to have a guardian appointed. He also opined that assisted living would be an appropriate level of care to meet her needs. Id. at p. 14, ll. 1-4. Mrs. Winstanley had been in skilled care for rehabilitation following a fall. Id. She was moved to an apartment in residential living and did not return to her prior independent living residence.

On July 23, 2014 the Court entered an Order finding Mrs. Winstanley to be an incapacitated person. The Court relied on the evidence presented by the Petitioner from Dr. John J. Mast whom the Court found credible. No other medical testimony was put forth at this hearing by Mrs. Winstanley or her daughter (who was not present at the hearing but who was represented by counsel that did attend the hearing) or Mr. David Winstanley. After finding Mrs. Winstanley to be an incapacitated person, the Court appointed Robert Stump of RES Consulting (hereinafter "Guardian"), a third-party professional guardian to serve as both guardian of the person and guardian of the estate. It was apparent during the initial incapacity hearing that the children of Mrs. Winstanley did not agree on who should serve as guardian for Mrs. Winstanley. At the time of this hearing, all three children agreed to the appointment of a neutral, third-party guardian.

It subsequently came to light that there had been some concerns about David Winstanley's behavior towards his parents in the years of 2013 to 2014[6]. Ms. Theresa Adams with Protective Services of the Lancaster County Office of Aging first met with Mrs. Winstanley

---

[6]At the October 14, 2015 hearing, Guardian presented the testimony of several witnesses who testified about complaints they investigated. The Court was not aware of this information at the time it entered the initial finding of incapacity.

on August 6, 2013 concerning allegations of emotional and verbal abuse of Mrs. Winstanley by her son, David Winstanley. N.T. 10/14/15, p. 214, l. 17- p. 215, l.8. Ms. Adams also testified that Mrs. Winstanley told her that David Winstanley would visit them and he would "emotionally and verbally scream at them, yell at them, will always threaten that, I'm never coming back to see you again."[7] Id. At p. 215, ll. 18-22. Ms. Adams testified that her supervisor met with David Winstanley to address these concerns. Id at p. 223, ll. 9-11. Ms. Adams subsequently visited with Mrs. Winstanley at Masonic Homes, the last visit being on August 18, 2014, at which time the case was closed[8]. See Affidavit at Guardian Exhibit I.

Ms. Kurtz, a social worker with Masonic Village assigned to work with Mrs. Winstanley from April, 2014 until September 9, 2014 also testified about events around the time of the initial incapacity proceeding. Following visits or telephone calls by David Winstanley, it was reported to Ms. Kurtz and Ms. Kurtz would also see that Mrs. Winstanley would be upset, crying and demonstrate an increased anxiety level. N.T. 10/14/15, p. 237, ll. 3- 15. Ms. Kurtz testified that she herself heard two voicemails left by David Winstanley for his mother threatening that he

[7]At the time of the hearing, Ms. Adams testified that a finding of abuse against David Winstanley was substantiated. At a subsequent hearing, Attorney Earl submitted argument and correspondence that Ms. Adams was incorrect and that no finding of abuse was substantiated. The Court did not assign the issue of whether the report was or was not substantiated with any significant importance. What the Court found significant was the testimony that Mrs. Winstanley admitted to Ms. Adams that her son, David Winstanley, was verbally and emotionally abusive to her. The evidence of the interactions of David Winstanley with his mother are of upmost importance to this Court in determining who should serve as guardian and as to whether it is in the best interests of Mrs. Winstanley to move closer to David Winstanley.

[8]It is noted that no further reports were submitted to the Office of Aging **after** Guardian had been appointed. The Court believes there is a correlation between these two facts. This is corroborated by the testimony of Beth Bossert who is COO of Healthcare Services for Masonic Homes who testified that things settled down between Mrs. Winstanley and David Winstanley "[w]hen the guardian was appointed." N.T. 10/14/15, p. 257, ll. 7-9.

6

would stop visiting if Mrs. Winstanley continued to talk to Richard Winstanley. Id. at p. 237, l. 23- p. 238, l.6. Mrs. Winstanley admitted to being very upset with how David Winstanley spoke to her. Id. at p. 238, ll. 20-23. Ms. Kurtz also personally witnessed an incident on June 9, 2014 where David was yelling not only at Masonic Homes staff, but also his mother, Mrs. Winstanley. Id. p. 239, ll. 9 - 22 and see also Affidavit at Guardian Exhibit J. Specifically, David Winstanley was telling Mrs. Winstanley to tell the staff that she did not want Richard Winstanley to be her power of attorney[9]. Id.

Al Lee, an elder victims advocate for the Lancaster County District Attorney's Office also testified concerning the interactions of David Winstanley and his parents at the period immediately preceding the initial incapacity hearing. Mr. Lee testified that he was informed of the disturbances involving David Winstanley and Mr. and Mrs. Winstanley by both the Office of Aging and the staff at Masonic Homes. Mr. Leed spoke directly to David Winstanley about these concerns on May 7, 2014 and followed this telephonic conversation up with a letter of May 8, 2014. N.T. 10/18/15, p. 205, l. 4- p. 207, l. 4.

The Court found the testimony of Ms. Adams, Ms. Kurtz, Ms. Bossert and Mr. Lee to be credible and unbiased. It was also disturbing to hear of how David Winstanley spoke to Mrs. Winstanley and treated his elderly mother. Of great importance was how David reportedly yelled at his mother about her choice to have Richard Winstanley serve as her Agent. David Winstanley's actions demonstrate to this Court his inability to support the choices of Mrs. Winstanley when he disagrees with those choices.

---

[9] 6 days after this incident, Elizabeth A. Winstanley took her mother to execute the new Power of Attorney.

7

On July 30, 2014 David Winstanley filed a Motion for Immediate Reconsideration, which was denied by the Court on August 1, 2014. In his Motion for Immediate Reconsideration, David Winstanley accuses Masonic Village of a host of egregious behavior, including utilizing a "sleep-deprivation program" to "make MOM look goofy; that Dr. Mast "lied though his teeth and committed a fraud upon this Court"; and the reliance of the Court on Dr. Mast's testimony which was "boilerplate mumbo-jumbo". See Motion for immediate Reconsideration filed July 30, 2014.

On August 11, 2014, David Winstanley filed a Second Motion for Immediate Reconsideration. On August 18, 2014, David Winstanley filed a Motion also entitled "Second Motion for Immediate Reconsideration" but in the initial clause of the Motion he refers to the Motion as the Third Motion. Both Motions were subsequently denied by Court Order on August 18, 2014 and September 30, 2014 respectively.

David Winstanley assisted his mother in finding new counsel and hired Attorney Matthew Menges. On August 22, 2014, Attorney Menges entered his appearance on behalf of Mrs. Winstanley, replacing Ms. Williams, the Court appointed counsel, and filed an appeal to the Superior Court challenging the Court's finding of incapacity. On November 19, 2014, the Court entered an Opinion Sur Appeal on the issues raised by Attorney Menges. That opinion is incorporated herein.

On October 14, 2014, Attorney Menges filed a Petition for Review Hearing under 20 Pa.C. 5512.2(a) [sic]. Within the Petition, the request was made that the Guardianship over Mrs. Winstanley be adjusted so that a limited guardianship be entered; a replacement guardian be appointed; and that Mrs. Winstanley be transferred from Masonic Village.

8

After the Opinion Sur Appeal was filed by the Court on November 19, 2014, Attorney Menges withdrew his appeal to the Superior Court and the record was returned from the Superior Court on December 8, 2014. On January 15, 2015, Attorney Brillhart withdrew his appearance for Elizabeth A. Winstanley.

The Court then proceeded forward on the Menges Petition for a Review Hearing. A new hearing was scheduled for February 4, 2015. At the February 4th hearing, Attorney Menges presented the testimony of an expert witness, Dr. Christopher D. Royer, who opined that Mrs. Winstanley maintained her capacity in its entirety. Dr. Royer's expert report consisted of 4 pages which included an initial summary page, a background information page, a diagnosis page with impressions and a signature page. See Plaintiff's Exhibit P-2, 2/4/15. Dr. Royer met with Mrs. Winstanley on December 3, 2014 at his office for 60 minutes. David Winstanley transported Mrs. Winstanley to and from this office appointment.

Also present at the February 4, 2015 hearing was Patricia Krout and Fran Rowley. Ms. Rowley is the Nurse Manager of Personal Care at Masonic Homes. Ms. Rowley testified that Mrs. Winstanley enjoys the music programs and craft programs offered through Masonic Homes. 2/4/15, p. 157, ll. 20-22. Furthermore, Mrs. Winstanley has formed relationships with other residents. Id. at p. 158, ll. 1 - 3. Ms. Rowley also testified that, in her 45 years of nursing, Mrs. Winstanley's case has been "probably the most challenging thing I have ever dealt with." Id. at p. 161, ll.17-19. Finally, Ms. Rowley testified that initially when Mrs. Winstanley came to reside in assisted living, there appeared to be a power struggle between David Winstanley and Guardian. Id. at p. 163, ll.17-21. This power struggle took its toll on Mrs. Winstanley. Mrs. Winstanley would be anxious and distraught after visits with David Winstanley, when David's

9

ability to take Mrs. Winstanley somewhere was not permitted by Guardian. Id. at p. 163, ll. 21-24. However, David's visits after Ms. Winstanley was moved to assisted living on September 14, 2015, were appropriate. Id. at p. 154, ll. 12-15; p. 163, l. 25- p. 164, l.1.

Patricia Krout works for RES Consulting and was the day to day contact person for Mrs. Winstanley. She lives in York County and provides services for clients in York and Lancaster County. N.T. 2/4/15, p. 174, ll.20-23. Ms. Krout testified that the first time she met Mrs. Winstanley, David Winstanley was present. Id. at p. 175, ll. 20-21. Furthermore, at a subsequent meeting when Robert Stump was meeting Mrs. Winstanley for the first time, David Winstanley was also present, along with Ms. Krout. Id. at p. 176, l. 21- p.177, l.12. Ms. Krout testified that she observed Mrs. Winstanley engaging in activities with other residents at Masonic Homes. Id. at p. 178, l. 21- p. 179, l. 1. Ms. Krout testified that she would visit with Mrs. Winstanley for three to five hours and noted that she witnessed Mrs. Winstanley being forgetful. Id. at p. 184, l. 18- p. 185, l. 16. Ms. Krout was visiting with Mrs. Winstanley approximately once a week and keep in contact with the staff at Masonic Homes. Id. at p. 204, l. 20- p. 205, l.6. Furthermore, Ms. Krout testified that Mrs. Winstanley's case took up about 30 to 35% of her time but that she enjoyed spending time with her. Id. at p. 205, ll.15-16; p. 211, ll. 14-15.[10]

Due to the conflicting nature of the testimony of Dr. Mast whose testimony was presented at the first hearing on capacity and the testimony of Dr. Royer whose testimony was presented at the most recent hearing, the Court, pursuant to 20 Pa.C.S. §5511(d) Ordered an independent

---

[10]The significant amount of time dedicated to caring for Mrs. Winstanley as well as responding to the various requests and demands of the family are evidenced by the extensive time spent by Ms. Krout and Mr. Stump and memorialized by their billing statements sent to the Court for review and approval on a recurring basis.

evaluation of Mrs. Winstanley by Dr. Robert Howse. The hearing of February 4th was continued so that the evaluation by Dr. Howse could be completed.

On May 22, 2015, Attorney Minnich, counsel for Guardian, filed a Petition for Review Hearing. The Petition of the Guardian raised concerns about the well-being of Mrs. Winstanley based upon the purported actions of her son, David Winstanley. That Petition was set to be heard at the same time as the Court re-convened to hear the testimony of Dr. Howse.

The June 12, 2015 hearing was held as scheduled for the purpose of taking the testimony of Dr. Howse and to hear the Guardian's Review Petition of May 22, 2015. On June 12, 2015, Douglas Earl, Esquire, entered his appearance for children Elizabeth A. Winstanley and David Winstanley. After a discussion in chambers with Attorney Menges, Attorney Minnich (counsel for Guardian) and Attorney Earl, it appeared that all counsel were in agreement to look into moving Mrs. Winstanley to the Annapolis, Maryland area so that she could be closer to her son, David Winstanley. The Court was provided correspondence by Mrs. Winstanley stating this preference. At that time, there was a discussion about a possible facility in Annapolis, Maryland, commonly called The Gardens. It was noted and discussed that The Gardens might not provide the appropriate level of care Mrs. Winstanley needed at the time. Richard Winstanley was not involved in any of these discussions.

After the lengthy discussion in chambers, the Court briefly went on the record to attempt to summarize the in- chambers discussion. On the record, the Court specifically stated, "The law is very clear. The law says that we should always listen to what a person says once they are under Court supervision, that we are to take their wishes and desires into account. We don't always do what they want, but we have to at least listen. . . . It is her request to be removed from

11

[Masonic Homes]. So, I'm going to honor that and we are going to at least investigate it."" N.T. 06/12/2015, p. 8, ll 9 - 22.

Dr. Howse was present on June 12, 2014 to testify concerning his findings. Dr. Howse performed his evaluation on March 24, 2015. His written report had been provided to all counsel. See Court Exhibit #1. All counsel stipulated to the admission of his report in which Dr. Howse opined that Mrs. Winstanley was a totally incapacitated person. The Court adjourned the hearing without hearing the testimony of Dr. Howse. An evaluation of facilities in Maryland was to be conducted by Guardian. The Court was of the opinion that this possible resolution would save Mrs. Winstanley from hearing and seeing the intense animosity that existed among her children. In hindsight, all it did was delay the inevitable confrontation.

However, open and productive dialog between the Guardian and David Winstanley, either through his Attorney or independently, seemed to disintegrate almost instantaneously after the June 12, 2015 hearing date. Attorney Menges was fired by David Winstanley, an act that was later ratified by Mrs. Winstanley. Regardless, Attorney Menges still sought and was granted permission to Withdraw as Counsel by Court Order dated July 14, 2015[11].

---

[11]Attorney Menges also filed a Petition for his outstanding bill to be paid by the Estate. In that Petition, he informs the Court that although he represented Mrs. Winstanley, her legal fees had been paid for by David Winstanley up until his termination. Attorney Menges seeks to have his bill paid by the Estate and neither David nor Elizabeth A. Winstanley have objected. However, it was apparent to the Court that the obligor of the debt is David Winstanley. Furthermore, the continued finding of incapacity as it relates to Mrs. Winstanley calls into question her ability to contract for the services of either Attorney Menges or Attorney Beckett who currently serves as counsel for Mrs. Winstanley. The Court has denied payment of the Menges bill from Mrs. Winstanley's estate.

12

On June 26, 2015, Attorney Earl[12] filed a Petition for Emergency Review Hearing requesting the replacement of the Guardian and proposing the appointment of Candace Beckett, J.D., LL.M. On June 29, 2015, Attorney Earl filed an Amended Petition for Emergency Review Hearing also requesting the replacement of the Guardian with Candace Beckett. On July 9, 2015, Candace Beckett, Esquire, entered her appearance as counsel for Elizabeth W. Winstanley.

A hearing was scheduled for August 26, 2015 to address the three pending petitions; the Petition for Review Hearing filed October 14, 2014; the Guardian's Petition for Review Hearing filed May 22, 2015; and, the Amended Petition for Emergency Review Hearing filed by Attorney Earl on June 29, 2015.

Richard Winstanley, who was representing himself at the time, was unable to attend the August 26, 2015 hearing and requested a continuance of the hearing. Richard Winstanley had attended all prior hearings and the Court granted his request for a continuance over the objections of Attorney Earl and Attorney Beckett so he could be present for the hearing. A new hearing was scheduled for October 14, 2015.

On September 3, 2015, Attorney Beckett filed an Amended Petition for Review Hearing wherein she requested the Removal and/or Replacement of Guardian. This Amended Petition

---

[12]It is noted by the Court that every pleading Attorney Earl has submitted since his entry of appearance has been verified by him, as counsel for either David Winstanley or Elizabeth A. Winstanley. While the Court notes that Elizabeth A. Winstanley did reside in Australia at the beginning of this litigation, she has since moved to Annapolis, Maryland. No substitute verifications by his clients have ever been provided for any pleading. Attorney Earl relies upon the fact that David and Elizabeth A. Winstanley "reside outside of the jurisdiction and the verification cannot be obtained within the time to file this petition." This Court notes it has never seen the attorney verification used to this degree and it causes the Court concern that no substitute verifications have ever been submitted to the accusations leveled purportedly by David Winstanley and Elizabeth A. Winstanley.

13

was listed to be heard at the October 14, 2015 hearing.

On September 3, 2015, Attorney Earl filed a Second Amended Petition of David Winstanley and Elizabeth A. Winstanley for Emergency Review Hearing wherein he requested the "Replacement/an or Removal of Guardian"[sic]; "Transfer from Masonic Village to Annapolis Maryland" and "Immediate Transfer of Guardianship to Anne Arundel County". It was also listed to be heard at the October 14, 2015 hearing. It was the erroneous impression of the Court that the issue of Mrs. Winstanley's capacity had been resolved by Dr. Howse and that the October 14, 2015 hearing would be addressing the removal of Guardian as requested in the most recent Petitions filed by Attorney Earl and Attorney Beckett.

However, at the October 14, 2015 hearing Dr. Royer was again called to testify after having had the opportunity to supplement his report submitted at the February 2015 hearing. Dr. Paul Eslinger was also called to testify. Prior to the scheduled hearing, the Court was not made aware that these two experts would be testifying and, as a result, no arrangements were made to have Dr. Howse testify in person about his assessment of Mrs. Winstanley. Furthermore, the written report of Dr. Eslinger and second report of Dr. Royer were not provided to the Court in advance of the hearing with notice to the Court that more expert medical testimony was anticipated[13]. While both Doctors were called to provide an opinion as to whether Mrs.

---

[13]Dr. Eslinger's report was attached to Elizabeth W. Winstanley's Answer to Guardian's New Matter filed October 2, 2015. It appears that this report had been faxed to Attorney Menges on May 21, 2015, well before the chambers conference held on June 12, 2015 wherein no mention was made of re-calling Dr. Royer or calling Dr. Eslinger by Attorney Earl. Yet at the June 12, 2015 conference, Attorney Earl stipulated to the report of Dr. Howse and his dismissal without the need to testify without providing the Court with this pertinent information. At the October 14, 2015 hearing, Attorney Earl stated that both experts had been at the June 12, 2015 hearing, so Attorney Earl was well-aware of his intention to call them.

14

Winstanley was an incapacitated person, the direct testimony of both witnesses was conducted by Attorney Earl, the attorney for David Winstanley and Elizabeth A. Winstanley, as opposed to Mrs. Winstanley's own counsel[14].

Dr. Royer testified that he had the opportunity to complete a reassessment on Mrs. Winstanley on October 7, 2015. This reassessment was conducted after reviewing Dr. Howse's report. They met for 80 minutes in an apartment at Masonic Homes and he reduced his report to writing, which was marked as an exhibit and admitted at the time of the hearing. See Winstanley Exhibit #1. Dr. Royer's reassessment report is 2 pages. Id. Dr. Royer reported that when asked who Mrs. Winstanley would like to have as her Power of Attorney she chose either her attorney in Maryland or her accountant. Id at page 2. Dr. Royer also prepared a critique of the report of Dr. Howse. See Winstanley Exhibit #2. Winstanley Exhibit #2 was produced in June of 2015 and not supplied to the Court or Guardian before the October hearing.

Dr. Paul Eslinger testified that he met with Mrs. Winstanley on March 20, 2015 when she was brought to his office by her son, David Winstanley. Dr. Eslinger's report stated that Mrs. Winstanley "presented with her son, David, who was helpful in regards to assisting Ms. Winstanley in conveying her concerns. According to **their** account, . . . ." See Winstanley Exhibit #3, page 1, *emphasis added*. Dr. Eslinger's report references his review of the evaluation

---

[14]Mr Earl: At this time I would call Dr. Royer.
The Court: Is this your witness?
Mr. Earl: Yes, Your Honor.
The Court: It's not - - it's not Ms. Beckett's witness?
Mr. Earl: It- - it's also Ms. Beckett's witness.
    Well, she can start the questioning. That's fine.
Ms. Beckett: No. You can start the questioning.
N.T. 10/14/15, p. 13, ll 13-23; See also p. 41, ll. 12-18.

of Jason Brandt, Ph.D. at Johns Hopkins, Maryland and Dr. Christopher Royer, Psy.D. Id. No reference is made to Dr. Mast's testimony or any other records.

Dr. Eslinger testified that he believed Mrs. Winstanley was mentally competent. However, he also testified that her short-term memory scores were on the low side. Further, he said that Mrs. Winstanley had mild cognitive impairment that raise a concern and "a person may need some support services, either though a spouse or family member, to provide reminders." N.T. 10/14/2015, p. 49, ll. 7- 16. Dr. Eslinger said for patients demonstrating mild cognitive impairment, "we look at it in kind of a practical sense, in the sense that, where they're living, do they have someone who can be sure they're taking their medication carefully, going for their medical checkups, being sure that if they have questions about, you know, going shopping and paying their bills that they have someone just to provide reminders to them about being sure these things are done but that otherwise they should be able to be pretty independent in their daily activities but just to have somebody close for their safety and well-being." Id. at p. 50, ll. 6- 16.

Dr. Eslinger's report also states that Mrs. Winstanley had low average to borderline results for executive functioning and problem solving. A person with compromised executive functioning is more susceptible to designing persons. In response to the Court noting that the different opinions from the experts all focus on the concept of instrumental activities of daily living and executive functioning to which Dr. Eslinger responded "Yeah. And it does come a bit to this- - - you know, the legal notion of competency. It's almost like we're trying to make it black and white, but it's really the spectrum and a very gray area. So if someone's at risk for it, is that enough to say they're incompetent? And 90 percent of the time they're probably not but maybe for that 10 percent of the time that is enough to- -. . . So with this mild cognitive

16

impairment, there's some degree of change that puts one at risk for making, you know, decisions that are not fully informed." Id. at p. 63-64. The discrepancy between expert opinions as to Mrs. Winstanley's capacity, as opined by Dr. Eslinger, seems to come down to risk and the amount of risk one expert is willing to expose an incapacitated person to with regards to designing persons. Id. at p. 64, l. 22- p. 65, l. 4.

At the October 14, 2015 hearing, Attorney Earl also presented the testimony of David Winstanley and Elizabeth A. Winstanley, his clients as well as Mrs. Winstanley, Mrs. Winstanley's niece, Carol Miller and a friend of Mrs. Winstanley, Stacy Barton. Attorney Minnich, counsel for Guardian, presented the testimony of witnesses, who had signed affidavits, about the relationship between Mrs. Winstanley and David Winstanley[15] and Mrs. Winstanley's daily functioning within the Masonic Homes environment.

A final hearing date of December 2, 2015 was set for Dr. Howse to appear to testify. At this hearing, Richard Winstanley also testified as well as Mrs. Winstanley and Mrs. Rowley, a nurse manager at Masonic Homes.

Like Dr. Royer, Dr. Howse had the opportunity to meet with Mrs. Winstanley for a second evaluation, or update. He conducted his second evaluation on November 16, 2015. Dr. Howse testified in accordance with his expert reports and found that Mrs. Winstanley continued to be an incapacitated person. Dr. Howse testified that he believed the appointment of a guardian for Mrs. Winstnaley was necessary to protect her assets, her health and to protect her from

[15]These witnesses included Ms. Adams, Mr. Leed, Ms. Kurtz and Ms. Bossert whose testimony was referenced by the Court earlier in this opinion.

17

designing people[16]. N.T. 12/2/15, p. 42, ll.1-7. Given her ability to reasonably perform her activities of daily living he recommended that assisted living was an appropriate level of care at this time.

The Court notes that the testimony presented throughout these hearings demonstrates the complete contempt of David Winstanley to this Court and the Orders entered by this jurisdiction. This Court appointed Guardian to serve as guardian of the person and the estate. Despite knowing that it was the responsibility of Guardian to set-up medical appointments for Mrs. Winstanley, David has taken his mother to see Dr. Royer and Dr. Eslinger without the consent of Guardian. Reports were made that David Winstanley also attempted to take his mother to see her accountant in Western Pennsylvania despite Guardian being appointed as Guardian of the estate. This appears to have created considerable controversy, tension and mistrust between Mrs. Winstanley and Guardian. Instead of accepting Guardian's authority, David Winstanley and Elizabeth A. Winstanley appear to have openly and consistently criticized and attempted to undermine it. Mrs. Winstanley, after her husband's death, was never encouraged or allowed to acclimate to that major change in her life and live where she and her husband had chosen to retire. Instead, Mrs. Winstanley found herself not only in the middle of the ongoing contentious and never ending family dispute but unknowingly was thrust into a dispute with Guardian orchestrated by her two children.

At the conclusion of the December 2, 2015 hearing, the Court, on the record, found Mrs. Winstanley to still be an incapacitated person. The Court granted the request of Mrs. Winstanley

---

[16]Dr. Howse testified that designing people are "persons who would exhibit or try to exhibit and impress undue influence on decision making and potentially subordinate the original values and wishes and goals of the client at hand." N.T. 12/2/15, p. 42, ll. 8-13.

and Attorney Earl to remove the Guardian, Robert Stump and RES Counsulting. In doing so, the Court did not find that Robert Stump and RES Consulting had in any way breached any fiduciary duties to Mrs. Winstanley or had done anything justifying removal under Chapter 55 of the Probate Estates and Fiduciaries Code. In the opinion of this Court, Guardian's relationship with David Winstanley and Elizabeth A. Winstanley had become so contentious that it was in Mrs. Winstanley's best interest to start over with a new guardian. Furthermore, RES Consulting was not licensed in Maryland, making it cumbersome to facilitate a transfer of the guardianship if that would be found to be in Mrs. Winstanley's best interest. The Court informed counsel it would reduce its Order to writing upon consultation with IKOR and Patricia Maisano to ensure that they were willing to serve as guardian of the person and the estate. The Court entered an Order on December 11, 2015 finding Mrs. Wintanley was still incapacitated and appointing Patricia Maisano of IKOR as guardian of the person and the estate. The instant appeal ensued.

Attorney Earl raises the following on appeal in his 1925 (b) statement filed January 11, 2016: that the Court erred in finding Mrs. Winstanley totally incapacitated; that the Court "erred by not finding that Elizabeth W. Winstanley should be permitted to move to the [sic] Annapolis, Maryland. . . . ."; and that the Court did not seek the input of Mrs. Winstanley and her adult children to the appointment of a new guardian.

Attorney Beckett raises the following on appeal in her 1925(b) statement filed January 29, 2016: that the Court erred in finding there was clear and convincing evidence of total incapacity; that the Court erred in failing to consider a less restrictive alternative to total incapacity; that Mrs. Winstanley should have been moved to Annapolis, Maryland; and that Mrs. Winstanley should have been consulted as to who the Court should have appointed as her substitute guardian.

19

This appeal challenges the Court's December 11, 2015 Order following the §5512.2 Review Hearing. At the time of the Review Hearing, Mrs. Winstanley was an incapacitated person under Pennsylvania law pursuant to this Court's final Decree entered on July 23, 2014.

While the original Petition for a Review Hearing filed by Mr. Menges requested a change to a limited guardianship, by the time the hearing was actually held counsel for Mrs. Winstanley and Counsel for David Winstanley and Elizabeth A. Winstanley were advocating that Mrs. Winstanley had full capacity.

The Guardian maintained that she remained totally incapacitated. Pursuant to §5512.2(b) Guardian, in advocating for the continuation of the guardianship, had the burden of proof by clear and convincing evidence. In re Estate of Rosengarten, 871 A.2d 1249 (Pa.Super 2005).

The Court finds that clear and convincing evidence was presented that Mrs. Winstanley remains a totally incapacitated person, and that a plenary guardian of her person and estate continued to be necessary. In reaching this decision, the Court relied upon the persuasive and credible testimony and opinions of Dr. Howse, based upon his two evaluations, that Mrs. Winstanley is a totally incapacitated person under Pennsylvania law. His opinion supported the initial determination by Dr. Mast as reflected in the original adjudication of incapacity entered in 2014, as well as the Johns' Hopkins evaluation conducted in May, 2014. Dr. Howse was appointed by this Court to conduct an independent evaluation of Mrs. Winstanley pursuant to §5511(d). While the Court is directed under that section to give "due consideration to the appointment of an evaluator nominated by the alleged incapacitated person", it became clear, as evidenced by the record, that the involvement of David Winstanley in taking his mother to medical appointments, and specifically to Dr. Royer and Dr. Eslinger for evaluations without the

20

participation or the knowledge of Guardian, that a completely independent evaluation was imperative to assist the Court.

Dr. Howse is a well respected Geriatrician who has testified before this Court numerous times in Chapter 55 proceedings. In this case, he had two opportunities over months to throughly evaluate Mrs. Winstanley, as well as review all of her medical records. Both evaluations were conducted at Masonic Homes in Mrs. Winstanley's apartment. He spent multiple hours talking and observing her over two evaluations. There were no other individuals present, including family or Guardian, on either occasion. He did not speak to any family members or Guardian prior to either evaluations. He spent extensive time with Mrs. Winstanley over the two sessions and had ample opportunity to talk to and observe her.

A review of his two reports which include specific quotes from Mrs. Winstanley, as well as the over 78 pages of his testimony at the December 2, 2015 hearing, where his opinion was subject to intensive cross-examination, supports his opinion that Mrs. Winstanley is a totally incapacitated person.

There is no question that Mrs. Winstanley enjoys remarkable health for her age. She remains capable of performing many of her ADL's without much assistance. However, the overriding and seminal issue in this very difficult case, based upon the totality of the evidence presented, involves Mrs. Winstanley's executive functioning. "Executive functioning is one of the - - is considered one of the highest organizing skills that human beings are capable of and engaging in. It's the ability to take all of the data that you have, the resources that you have, your goals and your valued and your drive, pack them up into one motion and make what happened what you want to have happened. So it's the ability to do what needs to be done." N.T. 12/2/15,

21

p. 51, ll. 18-25. Dr. Eslinger and Dr. Howse both observed a decline in Mrs. Winstanley's executive functioning.

Based upon the noted deficits in her level of executive functioning, to allow Mrs. Winstanley to have control over her finances could make her susceptible to entrusting these decisions to designing persons. Id. at p. 53. Dr. Howse testified that he did not find "her executive function to be robust enough to drive the helm of her estate. Her understanding of her abilities isn't complete, and so she will grossly overstate her ability to do something." Id.

Those same deficits affect her ability to consistently meet her essential requirements for her own physical health and safety. Dr. Howse also noted that it takes approximately "one and one half hour to start to see variance in her story. Although she can present well for about 45 minutes, the delusional nature of her prosecutory thinking becomes clearly evident at that point in time. After one hour, it becomes clear that she has lost most of the detail of a hour prior, and she starts to contradict herself. These contradictions clearly show deficits of memory, understanding, reasoning and appreciation which lead to unstable choices and make her prey to designing individuals. This could easily evade most interviewers, who seldom spend this much time with a client." See Court Exhibit #1, page. 14 of 16. In fact, Dr. Royer spent only 60 minutes with Mrs. Winstanley during his first evaluation and, at most, 80 minutes with Mrs. Winstanley during his second evaluation.

While Dr. Howse points out that the findings of Dr. Mast, Dr. Brandt and Dr. Royer are relatively consistent with regards to cognitive measures, the reasons for different resolutions are a result of the variances of opinion on how these results relate to decision making capacity. Id. Dr. Eslinger made the same or similar conclusion when discussing that incapacity is not black

22

and white but more of a spectrum.

The Court finds the testimony and opinions of Dr. Howse to be persuasive. The Court also found him to be credible and assigned more weight to his testimony and opinions than to the testimony and opinions of either Dr. Royer or Dr. Eslinger. His evaluations were more through, more complete and were clearly independent of any actual or attempted influence by any of Mrs. Winstanley's children or Guardian. His observations confirm the testimony from staff at Masonic Homes and Guardian regarding their observations of Mrs. Winstanley regarding short term memory deficits and periods of confusion and anxiety. The Court finds, based upon the totality of the record, that there was clear and convincing evidence demonstrating that Mrs. Winstanley continues to be a totally incapacitated person and continues to need a plenary guardian of her person and estate.

The assertion that the Court failed to take into consideration the input of Mrs. Winstanley and her adult children in the appointment of a replacement guardian is inaccurate. The Court has the right to appoint as guardian "any qualified individual, a corporate fiduciary, a nonprofit corporation, a guardianship support agency under Subchapter F (relating to guardianship support) or a county agency." 20 Pa.C.S. §5511(f). "The selection of a guardian for an incompetent lies within the sound discretion of the court to which the application for such appointment has been made and an appellate court will not reverse unless it is shown that the appointing court abused its discretion." In re Coulter's Estate, 406 Pa. 402, 412, 178 A.2d 742, 747 (1962) *citing* Arthur's Case, 136 Pa.Super. 261, 264-265; 7 A.2d 55 (1939); Voshake's Estate, 125 Pa.Super. 98, 101, 102, 189 A. 753 (1937). See also In re Estate of Haertsch, 437 Pa.Super.187; 649 A.2d 719 (Super Ct. 1994).

23

Mr. Richard Winstanley, as one of the three adult children of Mrs. Winstanley, has asserted that he believes a third-party guardian to be appropriate to be appointed for his mother. Mr. Richard Winstanley did not join in the Petition to remove Robert Stump and RES Consulting as Guardian. Finally, Mr. Richard Winstanley has not appealed the decision to appoint Mrs. Maisano. Attorney Beckett and Attorney Earl obviously do not speak of taking into consideration Mr. Richard Winstanley's input when asserting the Court failed to take into consideration the input of Mrs. Winstanley and her adult children.

Furthermore, this court takes umbrage with the assertion of Attorney Beckett that "the Court, on December 2, 2015, *sua sponte* replaced Robert Stump and RES Consulting LLC with Patricia Maisano of IKOR as Mrs. Winstanley's plenary guardian of person and plenary guardian of estate." See ¶7 of Elizabeth W. Winstanley's Statement Pursuant to Pa R.A.P. 1925(b) of Matters she Complains of on the Appeal. The Amended Petition for Review Hearing filed by Attorney Beckett on September 3, 2015 specifically incorporates all previous pleadings by the former attorney, Matthew Menges. The Petition for Review Hearing filed by Attorney Menges on October 14, 2014, ¶10 states that "Petitioner [Mrs. Winstanley] seeks the replacement of Robert Stump (hereinafter "Guardian") as her guardian." Furthermore, in the Amended Petition for Review Hearing filed by Attorney Beckett, she specifically avers that "[t]he Petitioner continues her request that the Guardian be removed and/or replaced immediately and that her Guardianship be transferred to Anne Arundel County, Maryland. See Amended Petition for Review Hearing, ¶ 6, last sentence. Her own client requested the removal of the Guardian. The

24

removal and replacement was hardly *sua sponte*[17].

The Court did take into consideration the requests of Mrs. Winstanley and Attorney Earl. Attorney Earl put forth the name of Candace Beckett as the person who should be appointed guardian of Mrs. Winstanley. See Amended Petition for Emergency Review Hearing filed June 29, 2015, ¶ 3[18]. However, Mrs. Beckett then entered her appearance on behalf of Mrs. Winstanley and advocated for the finding of Mrs. Winstanley to have capacity. Attorney Beckett also acknowledged, after entering her appearance for Mrs. Winstanley, that she was willing to serve as guardian. It is the opinion of this Court that her choice to represent Mrs. Winstanley instantly presents a barrier to her being considered as the guardian. The Court has no reason to question Mrs. Beckett's ability to serve as a guardian in a general sense of the term, but in the instant action and under the circumstances that exist including recently filed Petitions which will result in more hearings, this Court does not consider Mrs. Beckett to be an appropriate candidate for guardian of Mrs. Winstanley by this Court.

The Court put great deliberation into its appointment of Patricia Maisano and IKOR. It continues to be apparent that the adult children of Mrs. Winstanley do not get along and do not trust each other. Furthermore, both David Winstanley, through his counsel, and Richard Winstanley, through his testimony, demonstrated an extreme level of animosity towards each other with little concern for the fact that their mother was present for these accusations. The

[17]Furthermore, Attorney Beckett, on the record stated "And Mrs. Winstanley appreciates the fact that you found a guardian licensed in both Pennsylvania and Maryland." N.T. 12/2/15, p. 104, ll. 23-25.

[18]"The Guardian Robert Stump should be removed and Candace Beckett, J.D., LL.M. should be the Guardian." See Amended Petition for Emergency Review Hearing filed June 29, 2015.

Court's observations of and the comments by Elizabeth A. Winstanley during the last hearing also caused the Court concern as to her appropriateness to be the guardian. Therefore, a third-party guardian best serves this family in light of the dysfunction and open hostility displayed throughout the proceedings. IKOR is licensed as a Guardian in both Pennsylvania and Maryland. With the desire of Mrs. Winstanley to move to Maryland, the Court sought and found a guardian who could help orchestrate such a move if the guardian found it in the best interests of the incapacitated person. As stated earlier in this Opinion, the guardian proposed by two of the adult children, Attorney Beckett, was found not to be appropriate under the circumstances. The Court has not abused its discretion and the Court's appointment of Patricia Maisano should be upheld.

Finally, the appellants raise the issue of Mrs. Winstanley not having been moved to Maryland despite her request. It is clear to the Court that Mrs. Winstanley expresses a desire to move to Maryland. It appears from the statement of matters complained of on appeal that the appellants believe the Court should have somehow ordered the immediate removal of Mrs. Winstanley to Maryland. The Court's appointment of Patricia Maisano, a guardian licensed in both Pennsylvania and Maryland was intended to assist in a smooth transfer to Maryland, if appropriate. However, it is the responsibility of the guardian to determine what is in the best interests of Mrs. Winstanley.

There has always been a discrepancy between the level of care recommended for Mrs. Winstanley by Masonic Homes, Dr. Mast and Dr. Howse on one side and David Winstanley and Elizabeth Winstanley (and their experts) on the other. This has led to turbulent debates between David Winstanley and Guardian about what level of care and what facility in Maryland would be appropriate. David Winstanley and Elizabeth A. Winstanley appear to believe that their mother

26

could live independently in an apartment. To alleviate this stalemate, the Court appointed a new guardian, as requested by Mrs. Winstanley and Attorney Earl's clients[19]. Furthermore, the newly appointed guardian is licensed in Maryland so that an appropriate facility could be identified and a transfer, if appropriate could be handled by one guardian able to work in both Pennsylvania and Maryland.

The Court has not stood in the way of moving Mrs. Winstanley to Maryland. However, under 20 Pa.C.S.A. § 5521, "[i]t shall be the duty of the guardian of the person to assert the rights and best interests of the incapacitated person. Expressed wishes and preferences of the incapacitated person shall be respected to the greatest possible extent. . . ." It is the duty of the guardian to determine what is in the best interests of Mrs. Winstanley. It is the duty of the guardian to hear the wishes and preferences of the incapacitated person. However, the wishes must be balanced with what is in the best interests of the person.

This entire litigation can be encapsulated by one word, power. Mrs. Winstanley acknowledged this as the driving force. She testified at the initial Review of Incapacity Hearing

---

[19]The appointment of a new guardian did little to alleviate the contempt of David Winstanley and Elizabeth A. Winstanley towards *any* guardian appointed for Mrs. Winstanley. On January 4, 2016, Attorney Earl filed a Petition of David Winstanley and Elizabeth A. Winstanley for Review Hearing requesting the "IMMEDIATE REPLACEMENT/AN OR REMOVAL OF GUARDIAN" [sic]. As a course of conduct, this Petition was Amended by a new filing on January 20, 2016. It took precisely 24 days for the communications between this family and the brand new Guardian to decompensate to the point of filing of a Petition for Removal. Furthermore, Attorney Earl has filed a Motion requesting that this Judge recuse himself from the case. These matters, all filed post-appeal, remain pending before the Court. It was not until March 3, 2016 that Attorney Beckett filed a Joinder to the Petition of David Winstanley and Elizabeth A. Winstanley for Review Hearing, a Joinder to the Motion for Recusal and her own Petition of Elizabeth A. Winstanley Requesting that the Court Continue its Action to Take Necessary Steps to Transfer her Guardianship from Lancaster County, Pennsylvania to Anne Arundel County, Maryland as Court noted at the Hearing held on June 12, 2015.

on February 4, 2015 that she thought this whole proceeding was about power and when asked "[s]o would it be fair to say that you think that there's a power struggle among your three children, as far as trying to determine what's best for you?" she answered "Yes, I think that's what it is." N.T. 2/4/15, p. 60, l. 15 - p. 61, l. 13. The power struggle initially existed between the three adult children, Elizabeth A., David and Richard. Now this power struggle has shifted to a struggle between Elizabeth A., David and Guardian. Any guardian.

The record is clear that David Winstanley has continuously tested and contested the authority given by this Court to Guardian. He has tried to exert his will over the entire process, dating back to prior to the filing of the Chapter 55 proceeding. There is no doubt that he wants to control all aspects of Mrs. Winstanley's life and exerts great influence over her. Elizabeth A. Winstanley helped her mother execute a new Power of Attorney so that she could have the power to control her mother's person and estate. Richard Winstanley supports a third-party guardian. Mrs. Winstanley testified of her love for all three of her children and her grandchildren. The Court senses her great desire for peace in her family. But the children do not get along. To give power and control to any one of the children would not be in Mrs. Winstanley's best interest. It could result in the potential of depriving the other children and/or grandchildren of seeing Mrs. Winstanley, and having any meaningful and beneficial relationship with her. To allow one side to interview and select a successor guardian would also not be in her best interest and could result in potential bias against the other children. The only solution available to this Court, given the dysfunction within the family, was to appoint a successor guardain with no pre-existing

knowledge of the family[20]. In the opinion of this Court, Patricia Maisano and IKOR has the expertise and independence to serve as Mrs. Winstanley's guardian. An important consideration for this Court was the fact that she is licensed in both Pennsylvania and Maryland and can navigate through the laws of both states. Unfortunately, her authority and service has been challenged and attacked only 24 days into her appointment[21].

For the reasons set forth above, the Court's decree dated December 11, 2015 should be affirmed. Mrs. Winstanley remains a totally incapacitated person. The appointment of Patricia Maisano and IKOR was within the sound and reasonable discretion of this Court.

Attest.
*Emily Dougherty*

Date: March 4, 2016

ATTEST:

BY THE COURT

*Jay J. Hoberg*

JAY J. HOBERG

Copies: Paul Minnich, Esquire
       Candace Beckett, Esquire
       Douglas P. Earl, Esquire
       Richard Winstanley

---

[20]Before the initial appointment of Guardian after the July 17, 2014 hearing, the Court reached out to one other guardianship agency before appointing Guardian. This agency declined to serve as they had already been contacted by the family and felt that they could no longer serve as they had been given information by only one of the three children.

[21]Litigation is ongoing in this matter and currently pending before this Court is a Review Petition, a Motion for Recusal, a Discovery Motion filed by the current guardian and a Petition to continue to act to transfer guardianship to Maryland, as also referenced in footnote 19.

29